*In re* Wo Lee.

*(Circuit Court, D. California. January 26, 1886.)*

COURTS—JURISDICTION OF CIRCUIT COURT—HABEAS CORPUS—CONSTITUTIONALITY OF MUNICIPAL ORDINANCE.

While the circuit court of the United States has concurrent jurisdiction with the supreme court of a state on *habeas corpus* to inquire into validity of a municipal ordinance claimed to be in violation of the fourteenth amendment, it should not overrule a decision of the state court, but should refer the case to the United States supreme court for final decision.

On *Habeas Corpus.*

*Hall McAllister, D. L. Smoot,* and *A. L. Van Schaick,* for petitioner.

*Alfred Clark, contra.*

SAWYER, J. In the *Laundry Ordinance Case,* 7 Sawy. 531, S. C. 13 Fed. Rep. 229, Mr. Justice FIELD and myself held an ordinance to be void, under the fourteenth amendment of the national constitution, on the ground that, as a condition of obtaining a license, the party desiring to carry on that business must obtain the consent of the board of supervisors, which could only be granted upon the recommendations of not less than 12 citizens and tax-payers in the block in which the laundry was to be carried on; and we also held that a party arrested for violation of that ordinance was entitled to be discharged on writ of *habeas corpus* by the circuit court of the United States under the provisions of section 753 of the Revised Statutes of the United States. In the course of the decision in that case, Mr. Justice FIELD observed that in neither case can licenses "be required as a means of prohibiting any avocations of life which are not injurious to public morals, nor offensive to the senses, nor dangerous to the public health and safety; *nor can conditions be annexed to their issue which would tend to such prohibition.* The exaction, *for any such purpose,* of a license to pursue a vocation of this nature, or mak-

ing its issue dependent upon conditions having such a tendency, *would be an abuse of authority. Such is evidently the tendency and purpose of the condition required in the ordinance in question in this case, and we have no doubt of its invalidity.*" 7 Sawy. 531, and 13 Fed. Rep. 229. And such must necessarily be the *tendency* of any ordinance that requires the consent, which may be arbitrarily given or withheld, at the discretion of the board of supervisors, or of any other body or person, as a condition precedent to the exercise of a lawful and necessary calling.

After that decision, the ordinance was amended by omitting the requirement of the assent of 12 citizens and tax-payers in the block; but it still prohibited carrying on a laundry business, after complying with numerous onerous conditions, without, in addition, "having first obtained a license or permit therefor, duly granted by resolution of the board of supervisors." It prescribed no specific conditions, the performance of which should entitle the party to a license or permit; but the license or permit, after performance of all the other prescribed conditions, still depended upon the will or pleasure of the board of supervisors. It simply struck out the consent of the 12 tax-payers in the block, and left it to rest upon the consent of the board alone, thereby limiting the number of parties to the consent, without abandoning the principle. For this reason, in *Tom Tong's Case*, the circuit judge thought the objection still remained unobviated. On this point we think he is also sustained by authority. *Mayor of Baltimore* v. *Radecke*, 49 Md. 217; 33 Amer. Rep. 243–245. In that case, in commenting upon the ordinance then under consideration, the court says:

"It commits to the unrestrained will of a single public officer the power to notify every person who now employs a steam-engine, in the prosecution of any business in the city of Baltimore, to cease to do so, and, by providing compulsory fines for every day's disobedience of such notice and order of removal, *renders his power over the use of steam in that city practically absolute, so that he may prohibit its use altogether.* But if he should not choose to do this, but only to act in particular cases, *there is nothing in the ordinance to guide or control his action. It lays down no rules by which its impartial execution can be secured, or partiality and oppression prevented.* It is clear that giving and enforcing these notices *may and quite likely will bring ruin to the business of those against whom they are directed, while others, from whom they are withheld, may be actually benefited by what is thus done to their neighbors, and when we remember that this action or non-action may proceed from enmity or prejudice, from partisan zeal or animosity, from favoritism and other improper influences and motives easy of concealment and difficult to be detected and exposed, it becomes unnecessary to suggest or comment upon the injustice capable of being wrought under cover of such a power, for that becomes apparent to every one who gives to the subject a moment's consideration. In fact, an ordinance which clothes a single individual with such power hardly falls within the domain of law, and we are constrained to pronounce it inoperative and void.*"

And it can make no difference that the arbitrary discretion is reserved to a *board, instead of a single individual.* Indeed, where the

power is reserved to a board, there is a divided responsibility, and each member is less sensitive to its pressure upon his individual conscience. Each gives countenance and support to the others, who act with him. Thus they mutually sustain each other, and break the force of the weight of responsibility.

The district judge of this district, however, not being satisfied, we certified a division of opinion to the supreme court, thereby submitting the question for its decision as to the constitutionality of the ordinance as so amended, and the points of difference appear in *Ex parte Tom Tong*, 108 U. S. 557; S. C. 2 Sup. Ct. Rep. 871; see especially points 3 to 6, inclusive. Unfortunately,—the party being confined for an offense against the laws,—we supposed the certificate to be governed by the provisions of the statute relating to criminal cases, but the supreme court held the practice in civil cases to be applicable, and declined to take jurisdiction because a final judgment had not been rendered before the writ of error was sued out. Thus our misapprehension of the practice prevented a decision of the important, vigorously litigated, and vital questions presented. Had that case been decided, probably there would not have been any occasion for this case, as the principle involved would have been authoritatively settled, but we are ourselves unable to distinguish this case from either of the preceding. If the court was right in those cases, then it seems to us that the ordinance now in question must be void upon similar grounds. Section 1 provides that "it shall be unlawful, from and after the passage of this order, for any person or persons to establish, maintain, or carry on a laundry *within the corporate limits of the city and county of San Francisco, without having first obtained the consent of the board of supervisors*, except the same be located in a building constructed of either brick or stone." Thus, in a territory some 10 miles wide by 15 or more miles long, much of it still occupied as mere farming and pasturage lands, and much of it unoccupied sand banks, in many places without a building within a quarter or half a mile of each other, including the isolated and almost wholly unoccupied Goat island, the right to carry on this, when properly guarded, harmless and necessary occupation in a wooden building is not made to depend upon any prescribed conditions, giving a right to anybody complying with them, but *upon the consent or arbitrary will of the board of supervisors.* In three-fourths of the territory covered by the ordinance there is no more need of prohibiting or regulating laundries than if they were located in any portion of the farming regions of the state. Hitherto the regulation of laundries has been limited to the thickly-settled portions of the city. Why this unnecessary extension of the limits affected, if not designed to prevent the establishment of laundries, after a compulsory removal from their present locations, within practicable reach of the customers of their proprietors? And the uncontradicted petition shows that all Chinese applications are in

fact denied, and those of Caucasians granted; thus in fact making the discriminations in the administration of the ordinance *which its terms permit.*

The fact that the right to give consent is reserved in the ordinance shows that carrying on the laundry business in wooden buildings is not deemed, of itself, necessarily dangerous. It must be apparent to every well-informed mind that a fire, properly guarded, for laundry purposes, in a wooden building, is just as necessary, and no more dangerous, than a fire for cooking purposes or for warming a house. If the ordinance under consideration is valid, then the board of supervisors can pass a valid ordinance preventing the maintenance, in a wooden building, of a cooking-stove, heating apparatus, or a restaurant, within the boundaries of the city and county of San Francisco, without the consent of that body, *arbitrarily* given or withheld, as their prejudices or other motives may dictate. If it is competent for the board of supervisors to pass a valid ordinance prohibiting the inhabitants of San Francisco from following any ordinary, proper, and necessary calling, within the limits of the city and county, except at its arbitrary and unregulated discretion and special consent,—and it can do so if this ordinance is valid,—then it seems to us that there has been a wide departure from the principles that have heretofore been supposed to guard and protect the rights, property, and liberties of the American people. And if, by an ordinance, general in its terms and form, like the one in question, by reserving an arbitrary discretion in the acting body to grant or deny permission to engage in a proper and necessary calling, a discrimination against any class can be made in its execution, thereby evading and in effect nullifying the provisions of the national constitution, then the insertion of provisions to guard the rights of every class and person in that instrument was a vain and futile act. The effect of the execution of this ordinance in the manner indicated in the record would seem to be necessarily to close up the many Chinese laundries now existing, or compel their owners to pull down their present buildings and reconstruct of brick or stone; or to drive them outside the city and county of San Francisco, to the adjoining counties, beyond the convenient reach of customers,—either of which results would be little short of absolute confiscation of the large amount of property shown to be now, and to have been for a long time, invested in these occupations. If this would not be depriving such parties of their property without due process of law, it would be difficult to say what would effect that prohibited result.

The necessary tendency, if not the specific purpose, of this ordinance, and of enforcing it in the manner indicated in the record, is to drive out of business all the numerous small laundries, especially those owned by Chinese, and give a monopoly of the business to the large institutions established and carried on by means of large associated Caucasian capital. If the facts appearing on the face of the

ordinance, on the petition, and return, and admitted in the case, and shown by the notorious public and municipal history of the times, indicate a purpose to drive out the Chinese laundrymen, and not merely to regulate the business for the public safety, does it not disclose a case of violation of the provisions of the fourteenth amendment to the national constitution, and of the treaty between the United States and China in more than one particular? Does not the petition and return, as clearly as in the *Laundry Case*, present a case within the purview of the observations of Mr. Justice FIELD quoted from that case? We are ourselves unable to distinguish this case, in principle, from the *Laundry Case*. If this means prohibition of the occupation and a destruction of the business and property of the Chinese laundrymen in San Francisco,—as it seems to us this must be the effect of executing the ordinance,—and not merely the proper regulation of the business, then there is discrimination, and a violation of other highly important rights secured by the fourteenth amendment and the treaty.

That it does mean prohibition, as to the Chinese, it seems to us must be apparent to every citizen of San Francisco who has been here long enough to be familiar with the course of an active and aggressive branch of public opinion and of public notorious events. Can a court be blind to what must be necessarily known to every intelligent person in the state? See *Ah Kow* v. *Nunan*, 5 Sawy. 560; *Sparrow* v. *Strong*, 3 Wall. 104; *Brown* v. *Piper*, 91 U. S. 42.

But the supreme court of the state, in the recent *Case of Yick Wo*, 9 Pac. Rep. 139, has sustained this ordinance in all its parts, both as a valid ordinance under the state constitution, and under the provisions of the fourteenth amendment, and the treaty with China. Although the court does not discuss fully the latter aspect of the case, it announces its view to be that the points are covered by the principles declared in *Barbier* v. *Connolly*, 113 U. S. 27, S. C. 5 Sup. Ct. Rep. 357, and *Soon Hing* v. *Crowley*, 113 U. S. 703, S. C. 5 Sup. Ct. Rep. 730. We are ourselves unable to put the same construction on the rulings in those cases, or upon the effect of the principles announced. We have no reason to find fault with anything decided in those cases, as we understand them, but it does not appear to us that these cases go far enough to cover the points now raised. The question now decided does not appear to us to have been presented in either of the cases. Indeed, the writer of this opinion himself denied the writ of *habeas corpus* in *Soon Hing* v. *Crowley*, on the same grounds adopted by the supreme court on writ of error to this court. He did not consider that that case presented the same points decided in the *Laundry* and *Tom Tong Cases*. That ordinance reserved no arbitrary discretion to grant or refuse a permit. It provided for a license upon complying with prescribed conditions. Its validity was recognized, and we have never denied, and we do not now deny, the

power of the board of supervisors to properly regulate, by reasonable conditions, prescribed in advance, the carrying on of this or any other business in such a manner as to render it reasonably safe.

The *Case of Yick Wo* was argued before the state supreme court in bank, but the opinion was prepared by the commissioners, and the case decided against the petitioner by *the court* for the reason stated in the opinion of the commissioners. It thus had the approval, after full and solemn argument, both of the full court, consisting of seven judges, and of the three commissioners. In view of this decision, and of the views of the district judge of this district in *Soon Hing's Case*, wherein we divided in opinion, we do not feel sufficient confidence in our own views, in opposition to the apparent greater weight of judicial authority in this state, to justify us in holding the ordinance to have been passed in contravention of the provisions of the fourteenth amendment and of our treaty with China, or in discharging the petitioner on that ground.

This court has no appellate power over the courts of the state, and the writ of *habeas corpus* cannot be used to perform the functions of a writ of error. *Ex parte Reed*, 100 U. S. 23. As to the question on *habeas corpus*, there is only a *concurrent* jurisdiction with the state supreme court. The judgment of this court is no more binding on the state court than is that of the state court on this court. It is only a question as to how the judgment of a court of the dignity of the supreme court of California should be regarded and treated by an inferior court of the United States on a question fairly open to doubt, until that doubt shall be resolved by a court whose decision is controlling and binding on both. Although the statute imposes upon us the duty, which we could not, if we would, escape, of investigating and deciding all cases wherein a party alleges himself to be imprisoned in violation of the constitution, laws, and treaties of the United States, even where held in pursuance of a judgment of a state court, yet we do not conceive it to be our duty to overrule the action of the supreme court of the state unless it be upon the clearest and most undubitable grounds; and especially so, since the act of last winter has given an appeal, by means of which the party can have any question of difference between the local state and the United States courts authoritatively determined by a tribunal to the decisions of which all must yield obedience. Besides, a writ of error lies to the state supreme court from the supreme court of the United States, and this is the regular mode appointed by law for a review by an appellate tribunal of the questions involved. This is a case, under the circumstances, peculiarly proper to be left to the final arbitrament of that tribunal. A conflict between the supreme court of the state and the United States circuit court, in regard to a matter open to reasonable doubt, as this clearly is, over which they have concurrent original jurisdiction, would be very undesirable, and should be avoided when

practicable, and especially so where the party can have any error of either court corrected in the ordinary and regular course of judicial proceedings on writ of error or appeal.

The prisoner will be remanded, in deference to what appears to us to be the greater weight of judicial authority in this state, but, if desired, an appeal will be at once allowed, and it is to be hoped that both parties and the United States supreme court will co-operate to procure a speedy decision of a case that involves the interests—*the all*, we may say—of so large a number of Chinese residents, who have been for many years pursuing their peaceful and useful avocations in the laundry business in San Francisco, without any serious injury to the city or its citizens, but to the great convenience of many.

Let the writ be discharged and the petitioner remanded.