## MOORE v. UNITED STATES.

(Circuit Court of Appeals, Eighth Circuit. February 14, 1898.)

No. 895.

1. JURISDICTION OF FEDERAL COURTS—ADMISSION OF TERRITORY AS STATE—STATUTE.

In 1895 the plaintiff in error was indicted, with others, in a district court of the territory of Utah, under section 3 of the act of July 2, 1890 (26 Stat. 209), which declares illegal "every * * * combination * * * in restraint of trade or commerce in any territory." In January, 1896, Utah was admitted as a state, and thereafter the case was transferred to the federal court for the district of Utah, where, after hearing on demurrer to the indictment, the plaintiff in error was tried and convicted. *Held*, on writ of error, that neither under the act of congress authorizing Utah to form a state government (28 Stat. 111, 112), nor the constitution of Utah (article 24, § 7), nor by other legislation, was jurisdiction conferred upon the federal court to proceed with the case.

2. SAME.

*Held*, further, that the case did not come within the provisions of Rev. St. § 13, regulating the effect of the repeal of statutes, for the admission of Utah as a state did not operate to repeal the act of July 2, 1890, which still applies to the territories of the United States.

In Error to the Circuit Court of the United States for the District of Utah.

R. Harkness, George Sutherland, and Waldemar Van Cott, for plaintiff in error.

J. W. Judd, U. S. Atty., and W. L. Maginnis, Asst. U. S. Atty.

Before BREWER, Circuit Justice, SANBORN, Circuit Judge, and RINER, District Judge.

RINER, District Judge. November 4, 1895, the plaintiff in error, with others, was indicted in the district court within and for the Third judicial district of the territory of Utah, Salt Lake county, for unlawfully engaging in a combination in restraint of trade and commerce in that territory. The indictment charged that the defendants therein named, "on the 22d day of October in the year of our Lord 1895, in the district and territory aforesaid, and within the jurisdiction of this court, did willfully and unlawfully engage in a combination in restraint of trade and commerce in said territory in this: That the said defendant E. L. Carpenter, being then and there the agent in Salt Lake City, Salt Lake county, territory of Utah, of the Pleasant Valley Coal Company, a corporation engaged in mining coal, and selling the same at wholesale to dealers in coal in said Salt Lake City, and the said defendant F. H. Moore, being then and there the agent of the Union Pacific Coal Company, a corporation engaged in mining coal and selling the same at wholesale to dealers in coal in said Salt Lake City, and each and all of the said defendants other than said Carpenter and said Moore being then and there engaged in the business of buying coal and selling the same at retail in said Salt Lake City, and each and all of said defendants except said Carpenter and said Moore being then and there members of an association designated and known as the Salt Lake

Coal Exchange, said Salt Lake Coal Exchange being a voluntary association of nearly all of the dealers in coal at retail in said Salt Lake City, and not a corporation; each and all of the defendants did then and there combine together to prevent any person engaged in the business of buying coal and selling the same at retail in said Salt Lake City, and not a member of said exchange, and any person desiring to engage in such business in said city, and not a member of the said coal exchange, from purchasing coal from said Union Pacific Coal Company and from the said Pleasant Valley Coal Company at as low a price as that for which the same kind of coal was being sold by said corporations to members of said Salt Lake Coal Exchange, and to make the price of coal from such corporations to dealers in coal at retail in said city, and persons desiring to engage in dealing in coal at retail in said city, who are not members of said exchange, so great as to prohibit and prevent them purchasing coal of said corporations, and selling the same at retail in said city, and to unlawfully raise, augment, and increase the price of coal at retail in said Salt Lake City, and to destroy free competition in the sale of coal in said city, and to compel the consumers of coal in said city to pay therefor the prices fixed by the said coal exchange; that in pursuance of said combination said F. H. Moore, as agent of said Union Pacific Coal Company, did on the 23d day of October, 1895, refuse to sell to one T. P. Lewis, who was then and there desirous of engaging in the business of buying coal and selling the same at retail in said Salt Lake City, and who was not a member of said coal exchange, a carload of what is known as 'Rock Springs coal,' which said Moore, as said agent, was selling to the members of the said coal exchange in car-load lots at three and $^{75}/_{100}$ dollars ($3.75) a ton, except at the price of five ($5) dollars per ton, which was then the retail price of said coal in said city, and refused to sell said coal at all except to the members of said exchange; and in pursuance of said combination the said Carpenter, as agent of said Pleasant Valley Coal Company, in said county, on the said 23d day of October, 1895, refused to sell to said T. P. Lewis, who was then and there desirous of engaging in the business of buying coal and selling the same at retail in said Salt Lake City, and who was not a member of said exchange, a car load of coal, said Carpenter having said coal for sale as said agent, for the reason that said Lewis was not a member of said exchange,—against the peace, and contrary to the form of the statutes of the United States in such case made and provided." December 14, 1895, the defendants were arraigned in the territorial court, and severally pleaded not guilty to this indictment. January 4, 1896, Utah was admitted into the Union as a state upon an equal footing with the original states. President's Proclamation, 29 Stat. 876. Thereafter this case was transferred to the circuit court of the United States for the district of Utah. November 11, 1896, the defendants obtained leave of court (counsel for the United States consenting thereto) to withdraw their pleas of not guilty theretofore entered in the territorial court, and to file a demurrer to the indictment upon the grounds (1) that the indictment charged no offense; (2) that it set out no means by which the alleged combination was to

be effected; (3) for the reason that it stated no act or fact to show that the alleged combination was in restraint of trade; (4) that the acts charged as overt acts were not shown to be in pursuance of any means to be employed; (5) that the prosecution had abated by the admission of the territory of Utah as a state. The demurrer was, as the record shows, sustained to that part of the indictment which charges a combination to raise the price of coal in Salt Lake City, and was overruled as to the remainder of the indictment. Thereupon each of the defendants entered a plea of not guilty, and on the day following—November 12, 1896—the case was tried, the trial resulting in a verdict of guilty as to all of the defendants. The bill of exceptions shows that when the testimony was concluded, and before the argument to the jury began, the defendants requested the court to instruct the jury to return a verdict of not guilty. This request was overruled by the court, and the defendants excepted. Motions in arrest of judgment and for a new trial were severally made and overruled, and on the 19th of November, 1896, the plaintiff in error was sentenced, by the court, to pay to the United States the sum of $200 as a fine, and one-half of the costs of the case, taxed at $88.60. He thereupon sued out this writ of error.

No questions in relation to combinations or conspiracies in restraint of interstate trade or commerce, or trade or commerce between one territory and another territory, or between a territory and a state, or between a state or a territory and a foreign nation, arise in this case. The indictment seeks only to charge the defendants with unlawfully entering into a combination in restraint of trade and commerce in the territory of Utah, and is based upon the following provision of an act of congress, entitled "An act to protect trade and commerce against unlawful restraints and monopolies," approved July 2, 1890:

"Sec. 3. Every contract, combination in form of trust or otherwise, or conspiracy, in restraint of trade or commerce in any territory of the United States * * * is hereby declared illegal. * * *" 26 U. S. Stat. 209.

While the constitution confers upon congress the power "to dispose of and make all needful rules and regulations respecting the territory or other property of the United States," and "to regulate commerce with foreign nations and among the several states and with the Indian tribes," it does not confer upon it the power to regulate trade or commerce within a state, or to legislate in respect thereto; wherefore the provision of the statute above quoted is confined to contracts or combinations in restraint of trade in a territory. The plaintiff in error now insists that the provision of section 3 of the act under which this indictment was found became inoperative in Utah when Utah was admitted into the Union as a state, and that the circuit court for that district had no jurisdiction to proceed in the case. The courts of the United States being courts of limited jurisdiction, with power to take cognizance of matters civil or criminal only as the power so to do is conferred upon them by statute, it becomes important to determine at the outset whether the circuit court had jurisdiction to try the offense with which the plaintiff in error stands charged in this indictment. When Utah was admitted

into the Union as a state on an equal footing with the original states, the territorial government within the boundaries of the new state was at an end. Its civil and political powers were transferred to other officers; those of peculiarly internal character to officers of the new state; those which bore any relation to the national system of government, of which the state formed a part, to officers holding commissions under that system, and possessing only the powers derived from their commissions. As one of the states of the Union and in virtue of that character forming one of the districts of the United States, the district of Utah, and the circuit court sitting in that district, would possess no peculiar jurisdiction or authority; none which did not appertain to other districts and the circuit courts having cognizance of matters within those districts. In the case before us the plaintiff in error was tried and convicted, in the circuit court of the United States for the District of Utah, upon an indictment charging him with the violation of an act of congress defining an offense which was an offense only when the agreement or combination complained of related to trade or commerce in a territory. The indictment was returned by a territorial grand jury, and filed in a territorial court during the existence of a territorial form of government. If, therefore, the circuit court possessed power and authority to try this case, it was because of the existence of legislation continuing the provision of the statute defining the offense set out in the indictment in force after the admission of the state, and specially conferring upon the circuit court for that district jurisdiction in such cases. That there can be no valid judgment pronounced upon conviction in a criminal case, unless the law creating the offense be at the time in existence, is well settled. The Irresistible, 7 Wheat. 551; U. S. v. Tynen, 11 Wall. 95. In Yeaton v. U. S., 5 Cranch, 281, Chief Justice Marshall said:

"It has been long settled on general principles that, after the expiration or repeal of a law, no penalty can be enforced nor punishment inflicted for violations of the law committed while it was in force, unless some special provision be made for that purpose by statute."

By its terms, the provision of the statute under which this indictment was found applies only to the territories of the United States, and, while it may yet be in full force within the territories, it is clear that no prosecution could be maintained under it for entering into a combination or conspiracy in restraint of trade in Utah after the date of her admission as a state. Permoli v. First Municipality, 3 How. 589. When Utah became one of the states of the Union, this statute ceased to be in force within its boundaries, unless, by appropriate legislation, it was continued in force for the purpose of prosecuting violations thereof committed during the existence of a territorial form of government.

The act of congress authorizing Utah to form a state government, after providing that the state of Utah should constitute one judicial district, to be called the "District of Utah," and providing the time and place for holding the circuit and district courts of the United States therein, and conferring upon the circuit and district courts for that district, and the judges thereof, the same powers and jurisdic-

tion, and requiring them to perform the same duties, possessed and required to be performed by the other circuit and district courts and judges of the United States, also provided:

"That the convention herein provided for shall have the power to provide, by ordinance, for the transfer of actions, cases, proceedings, and matters pending in the supreme or district courts of the territory of Utah at the time of the admission of said state into the Union, to such courts as shall be established under the constitution to be thus formed, or to the circuit or district court of the United States for the district of Utah: and no indictment, action, or proceeding shall abate by reason of any change in the courts, but shall be proceeded with in the state or United States courts according to the laws thereof, respectively."

"And the laws of the United States shall have the same force and effect within the said state as elsewhere within the United States."    28 Stat. 111, 112.

Under the authority conferred upon the constitutional convention by the enabling act, a schedule annexed to the constitution of the state provided that:

"All actions, causes, proceedings and matters which shall be pending in the district courts of the territory of Utah, at the time of the admission of the state into the Union, whereof the United States circuit and district courts might have had jurisdiction had there been a state government at the time of the commencement thereof, respectively, shall be transferred to the proper United States circuit and district courts, respectively, and all files, records, indictments and proceedings relating thereto, shall be transferred to said United States courts."    Const. Utah, art. 24, § 7.

The above provisions of the enabling act and the schedule comprise the legislation relating to the transfer and trial of cases pending in the district courts of the territory at the time Utah was admitted as a state, and for the continuation of the laws of the United States therein after her admission.    Clearly, no peculiar jurisdiction or authority is conferred upon the circuit court, for that district, by this legislation; on the contrary, the enabling act would seem to inhibit and exclude the exercise of any extraordinary or peculiar power either by the circuit or district courts within the newly created district.    That act provides:

"That the circuit and district courts for the district of Utah, and the judges thereof respectively, shall possess the same powers and jurisdiction and perform the same duties possessed and required to be performed by the other circuit and district courts and judges of the United States, and shall be governed by the same laws and regulations."

There is no provision of the enabling act, nor any other general or special act of congress, continuing the provision of the act of July 2, now under consideration, in force in Utah after the admission of the state; neither is there any statute which, in terms, provides for the transfer to and the trial of cases arising under that act in the circuit court for that district.    This case was transferred to and tried in that court for the reason, doubtless, that it was considered one of the cases which the enabling act declares shall not abate by reason of any change in the courts, but shall be proceeded with in the state or United States courts according to the laws thereof; and, as the indictment charged the defendants with violating a law of the United States, that the case came within the provisions of the enabling act, and also within the provision of the schedule annexed to the consti-

tution authorizing. the transfer of cases whereof the circuit court might have had jurisdiction had there been a state government at the time of the commencement thereof. We do not think the case is included within either of these provisions. There are some acts which congress may by law designate as a crime against the general government or against the operations of government which affect every citizen, whether of a state or territory; such as treason, illegally holding office, violations of the postal laws, counterfeiting, false impersonation in procuring naturalization, presenting false claims against the government, etc. The federal laws defining these and kindred offenses operate upon all citizens of the United States, and that they reside in a state constitutes no exemption from a prosecution for a violation thereof in the courts of the United States, for jurisdiction is expressly conferred by statute upon the federal courts. As applied to criminal laws, it is these laws of the United States that the enabling act declares shall have the same force and effect within the state of Utah as elsewhere within the United States; and it is prosecutions for violations thereof which, under the provisions of that act, are not to abate upon the admission of the state by reason of any change in the courts, but are to be transferred from the territorial district court, a court having jurisdiction in such cases during the existence of a territorial form of government, to the circuit and district courts, courts having jurisdiction in such cases after the admission of the state. That the provisions of the enabling act were so understood and construed by the constitutional convention is evidenced by the fact that in the schedule (annexed to the constitution) providing for the transfer of causes to the federal courts it provides only for those cases "whereof the United States circuit and district courts might have had jurisdiction had there been a state government at the time of the commencement thereof," and this is not such a case. If there had been a state government at the date of this indictment, no indictment could have been returned, for the reason that there would have been no law in force in the state of Utah defining such an offense.

Neither do we think the present case comes within the provisions of section 13 of the Revised Statutes. That section reads as follows:

"The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture or liability."

It is clear from the language of the section that it applies only to cases where the statute defining an offense has been repealed. The act of July 2d was not repealed by the enabling act, for it yet applies to the territories of the United States. It ceased to be in force in Utah only because it was superseded by the constitution upon the admission of the state.

Our conclusion is that no power existed by law in the circuit court for the district of Utah which did not appertain to the circuit courts in other districts; that the power and jurisdiction claimed for the circuit court in this case is a peculiar and extraordinary power, and

does not belong to it regularly by its constitution; that no such power has been bestowed upon it by any special legislation, and could not, therefore, be legally and properly exercised by it. In the view we have taken of this case it becomes unnecessary to consider the other assignments of error set out in the record. The judgment of the circuit court must be reversed, and the case remanded to that court, with instructions to dismiss the indictment.