## *Ex parte* BUCHANEN.

No. 27.   Opinion Filed April 15, 1908.

(94 Pac. 943.)

JURISDICTION—Manslaughter—Offense Antedating Statehood. Where an indictment for the crime of manslaughter, an offense committed under the laws in force in the Indian Territory, is returned after the admission of the state into the Union, no prosecution whatever having been begun prior to such date it is cognizable in the district court of the state in the county in which the offense was committed.

(Syllabus by the Court.)

Application by Frank Buchanen for writ of *habeas corpus.* Writ denied.

The relator, Frank Buchanen, is charged with having killed, on the 8th day of October, 1907, near Braden, Le Flore county, Okla., then Indian Territory, one Wayne Noblin, in such a manner as to constitute manslaughter, by indictment returned on the 12th day of December, 1908, at the December term of the district court for the Fifth judicial district of the state, held in Le Flore county. It is further stipulated of record that on November 19, 1907, an information was filed by the county attorney of Le Flore county with the county judge of said county, and a warrant was thereupon issued for the arrest of relator, and on the 21st day of November, 1907, the relator was apprehended by virtue of said warrant, and on the 4th day of December, 1907, a preliminary hearing was had before said county judge, whereupon said relator was committed to jail to await the action of the grand jury; and the relator is now detained by said sheriff by virtue of a commitment issued by the district court of said county on said indictment.

*Day & Du Bois,* for relator.

*Charles West, Atty. Gen.,* and *W. C. Reeves, Asst. Atty. Gen.* for respondent.

WILLIAMS, C. J.   (after stating the facts as above).   We have decided at this term of the court in the case of *Ex parte Bailey,* reported in this volume, 94 Pac. 442, that an indictment for the crime of murder—an offense committed under the territory

of Oklahoma—returned after the admission of the state into the Union, where no prosecution whatever had been begun before such date of admission, is cognizable in the district court of the state in the county in which the offense was committed. The question is now presented whether or not a prosecution for the offense of manslaughter committed in that part of the state formerly known as the Indian Territory, where no prosecution whatever had been begun—not even a complaint or information having been filed against the accused—prior to the admission of the state into the Union, can be instituted in the state courts and prosecuted to final judgment thereafter. Section 20 of the enabling act (Act June 16, 1906, c. 3335, 34 Stat. 277) as amended March 4, 1907, (34 Stat. 1287, c. 2911) provides as follows:

"That all causes , proceedings, and matters, civil or criminal, pending in the district courts of Oklahoma Territory, or in the United States Courts in the Indian Territory, at the time said territories became a state, not transferred to the United States Circuit or District Courts in the state of Oklahoma, shall be proceeded with, held, and determined by the courts of said state, the successors of said district courts of the territory of Oklahoma and the United States Courts in the Indian Territory; with the right to prosecute appeals or writs of error to the supreme or appellate court of said state, and also with the same right to prosecute appeals or writs of error from final determination in such cases made by the supreme or appellate  court of such state to the Supreme Court of the United States, as is provided by law for appeals and writs of error from the supreme or final appellate court of a state to the Supreme Court of the United States. *All criminal cases pending in the United States Courts in the Indian Territory, not transferred to the United States Circuit or District Courts in the state of Oklahoma, shall be prosecuted to a final determination in the state courts of Oklahoma under the laws now in force in that territory."*

In the decision of this court in the case of *Higgins v. Brown* (decided at this term of court and reported in this volume), 94 Pac. 703, it was held said section, having been concurred in on the part of the state by virtue of provisions contained in sections 27 and 28 of the Schedule to the Constitution , vested jurisdiction in the proper state courts of all criminal cases, not of a

federal character, pending at the time of the admission of the state into the Union in the territorial courts of Oklahoma and in the United States Courts in the Indian Territory, and in that same case it was held that if the crime of murder was committed in what was formerly the Indian Territory, not within a fort or arsenal or in such place in said territory over which jurisdiction would have been solely and exclusively within the jurisdiction of the United States, had it at that time been a state, such offense was cognizable in the state courts. To make such a construction as to necessitate the conclusion that the state courts would not have jurisdiction of such character of crimes, not of a federal nature or character, as might have been committed prior to statehood on the Indian Territory side, where no prosecution had been begun, would be tantamount to holding that it was the intention of Congress and of the constitutional convention that such crimes, not of a federal character, should not be prosecuted to a final judgment; for, although they had been defined as offenses by the laws in force in the Indian Territory, of the United States, they would not be cognizable within the federal courts after the admission of the state into the Union. *Moore v. United States,* 85 Fed. 465, 29 C. C. A. 269.

Section 1 of the Schedule to the Constitution provides:

"No existing rights, actions, suits, proceedings, contracts, or claims shall be affected by the change in the forms of the government, but all shall continue as if no change in the form of government had taken place. And all process which may have been issued previous to the admission of the state into the Union, under the authority of the territory of Oklahoma, or under authority of the laws in force in the Indian Territory, shall be as valid as if issued in the name of the state."

When this provision is construed in the light of the provisions of section 20 of the enabling act, as amended by the act of March 4, 1907, we are aided in reaching an interpretation as to what was intended by said section 1, *supra;* and we conclude that said provision has the same effect as that contained in said section 20, *supra,* where it is stipulated that certain cases "shall be prosecuted to final determination in the state district courts of Okla-

homa under the laws now in force in that territory." In the case of *Moore v. United States,* 85 Fed. 468, 29 C. C. A. *272, supra,* the court says:

"Its civil and political powers were transferred to other officers; those of peculiarly internal character to officers of the new state; those which bore any relation of the national system of government, of which the state formed a part, to officers holding commissions under that system, and possessing only the powers derived from their commission. As one of the states of the Union, and in virtue of that character forming one of the districts of the United States, the district of Utah, and the Circuit Courts sitting in that district, would possess no peculiar jurisdiction or authority; one which did not appertain to other districts and the Circuit Courts having cognizance of matters within those districts."

In the case of *Shively v. Bowlby,* 152 U. S. 1, 48, 14 Sup. Ct. 548, 566, 38 L. Ed. 331, the court says:

"By the Constitution, as is now well settled, the United States having rightfully acquired the territories, and being the only government which can impose laws on them, having the entire dominion and sovereignty, national and municipal, federal and state, over all the territories so long as they remain in the territorial condition," etc. (See, also, *Higgins v. Brown, ante,* this volume, and authorities therein cited.)

It may be contended, however, that the people of the state, through their constitutional convention, could not provide for the continuance of laws enacted by Congress for the government of the Indian Territory for the purpose of prosecuting to final judgment existing rights and actions, etc., having arisen thereunder prior to the admission into the Union. In the *Bailey Case, supra,* it was held that the only limitation upon the action of the convention was that the state government should be republican in form and the provisions of the enabling act complied with; everything else, which the convention had the power and the right to insert by reasonable implication, being permitted, and afterwards concurred in through the action of the President in issuing the proclamation admitting the state into the Union. In the case of *Ex parte Larkin,* 1 Okla. 53, 25 Pac. 745, 11 L. R. A. 418, it was

decided that it was within the power of the Legislature of the territory of Oklahoma to continue in force after the adjournment of the Legislature certain laws of Nebraska extended to said territory by act of Congress known as the "Organic Act" for said territory (Act. May 2, 1890, c. 182, § 11, 26 Stat. 81), until the adjournment of the first Legislature thereof. Afterwards, in the case of *U. S. v. Pridgeon,* 153 U. S. 54, 14 Sup. Ct. 746, 38 L. Ed. 631, the *Larkin Case* is cited with approval. In the *Pridgeon Case* the offense was committed prior to the adjournment of the first Legislature of said territory, and he was tried and convicted in the proper court of said territory after the adjournment of said Legislature. If the Legislature at its first session could by enactment provide for the continuing in force of said laws, why could not the constitutional convention in like manner continue in force laws that had been in almost practically the same manner extended in force in the Indian Territory by Congress, for the purpose of continuing prosecutions for the violation of said laws prior to the admission of the state into the Union? *Benner v. Porter,* 9 How. 235, 13 L. Ed. 120; *U. S. v. Pridgeon,* 153 U. S. 53, 54, 14 Sup. Ct. 746, 38 L. Ed. 633; *Ex parte Larkin,* 1 Okla. 53, 25 Pac. 745; *U. S. v. Moore,* 85 Fed. 465, 29 C. C. A. 269.

Whilst we do not readily reach these conclusions, yet we are clear that it was the intention of Congress, as well as the constitutional convention, that malefactors, who had committed serious and grave offenses against society prior to the admission of the state into the Union, when there had been no opportunity to lodge indictments against them ought not to go unwhipped of justice, and thereby the law not being vindicated after such infractions. Further, it is not clear in our minds that, if we are in error in our conclusions that the state district court has jurisdiction of such offense, that Congress can hereafter make provision for the final prosecution of such cases, still, in any event, such accused persons have the highest judicial tribunal of our Republic open to them in which to have determined whether or not they are unlawfully deprived of their liberty, and in the event it were determined in that forum that this court has erred, the

decision of such court would certainly be very persuasive with the Congress of the United States to cause it to take any possible action for the final prosecution of such offenses. And especially are we moved to take this course as it is a matter of record that the United States judge for the Eastern District of Oklahoma has ordered and directed that all prisoners in the custody of United States marshals for the several districts in the Indian Territory at the time of the admission of the state into the Union, charged with offenses not of a federal character, whether or not they were held by indictments or complaints filed with United States commissioners, be delivered over to the custody of the state authorities. It certainly will not be seriously contended that where a prisoner was being held by virtue of a commitment from the United States commissioner, he being apprehended by virtue of a warrant issued by such commissioner on a complaint filed before him, that such cause was pending at the time of the admission of the state into the Union in the United States court of the district in which said commissioner was located. *Virgina v. Paul,* 148 U. S. 107, 13 Sup. Ct. 536, 37 L. Ed. 386; *Ex parte Johnson,* 167 U. S. 120, 17 Sup. Ct. 735, 42 L. Ed. 103; *State v. Arlin,* 39 N. H. 179. To hold that the proper state court has no jurisdiction of such offenses is equivalent to opening the jail doors and turning loose dangerous felons upon society without a trial before a jury. We are constrained to adopt the reasoning that results in the proper state court having jurisdiction of such offenses, not being unmindful, however, of the rights and liberties of the accused. A speedy and fair trial is vouchsafed to every accused by the highest law of our land. By this chart, not only are the rights of the individual protected, but the interests of society are likewise safeguarded. Where the accused is afforded a speedy and fair trial, with the presumption of innocence as a shield, before a jury of his peers, no one has just cause for complaint. There is nothing in our holding that militates against this principle. See Church on Habeas Corpus (2d Ed.) p. 123, § 84; *In re Friedrich* (C. C.) 51 Fed. 747; *In re Wo Lee* (C. C.) 26 Fed. 471; *Spickler v. Block,* 43 Fed. 653, 10 L. R. A. 446.

Writ of *habeas corpus* denied.

All the Justices concur.