*Ex parte* LYDA HOWLAND.

No. A-250.    Opinion Filed November 5, 1909.

(104 Pac. 927.)

1. JUDGMENT—Nunc Pro Tunc. Where a defendant is tried convicted, and sentenced to imprisonment, but by error of the clerk the judgment is not entered on the records of the court, the error may be corrected at any time by an order nunc pro tunc.

2. COURTS—Records—Correction—"Pending." A criminal case is "pending" in the sense that a court may correct its records, until the judgment is fully satisfied.

3. COURTS—Records—Correction—Effect of Statehood. The district court of the state is the legal successor of the territorial district court for the purpose of correcting the record of a judgment rendered by the territorial court in an action pending at the time of admission of the territory to statehood.

4.    STATUTES—Time of Taking Effect—Criminal Procedure Act.
The criminal procedure act of the territory of Oklahoma was in
full force and effect April 11, 1902.

(Syllabus by the Court.)

Original application for *habeas corpus* by Lyda Howland.
Application denied, and petitioner remanded to custody.

The relator, Lyda Howland, filed her petition in this court
on July 13, 1909, alleging that she is restrained in the state peni-
tentiary by virtue of an alleged commitment, purporting to come
from the district court of Lincoln county, Okla. T., March term,
1902, and that such restraint is illegal for the reason "there is
no judgment roll of record against her in the records of said dis-
trict court of Lincoln county." The writ was issued returnable
on the 7th day of September, 1909. The warden of the state
penitentiary made his return on said writ, stating that he re-
strained the relator, Lyda Howland, as a convict under life sen-
tence and imprisonment for murder, under and by virtue of a
judgment and sentence in the district court of Lincoln county,
territory of Oklahoma, rendered on the 11th day of April,
1902, and attached a copy of said order and sentence as an
exhibit to his return. The respondent further answering, says
that since the issuance and service of the writ in this
case a certified copy of the judgment of the district court
of Lincoln county has been placed in his hands, a copy of which
is attached to his return, showing that an order was made by the
district court of Lincoln county, state of Oklahoma, on August
10, 1909, entering of record the judgment and sentence made
against the relator on the 11th day of April, 1902, *nunc pro tunc.*
The return, together with a certified copy of the order, *nunc pro
tunc,* was filed in this court on August 12, 1909. On September
8, 1909, the relator filed an amendment to her original petition,
alleging that "The alleged judgment and sentence recorded by an
order *nunc pro tunc* and now made a part of the return, thus to
change the issues as joined in this case, is an *ex post facto* judg-
ment, and cannot affect the right of this petitioner to an un-
qualified discharge from imprisonment," and also alleged that

the "pretended Code of Criminal Procedure under which peti-
tioner is alleged to have been tried was not a law of Oklahoma
Territory at the time of the alleged trial, and all action there-
under is void."

  *I. N. Terrill* and *Bessey & Gray*, for relator.

  *Chas. West,* Atty Gen., and *Chas. L. Moore,* Asst. Atty. Gen.,
for respondent.—On validity of Criminal Procedure Act: *In re
Thomas P Queenan* (an unreported Oklahoma case decided Octo-
ber 9, 1901). On correction of the record by *nunc pro tunc*
order: *Ex parte Dick Cook,* 2 Okla. Cr. 684; Bunn's Okla. Const.
§§ 544, 477, 476; *Higgins v. Brown,* 20 Okla. 355; *Mauney v.
Pemberton,* 75 N. C. 219; 6 Words and Phrases, p. 5277, word
"pending," and cases cited; *U. S. v. Taylor,* 44 Fed. 2.

  OWEN, JUDGE (after stating the facts as above). There is
no contention in this case that a judgment was not rendered
against the petitioner. The contention is, as appears in the orig-
inal petition, that at the time the petition was filed in this case
there was no "judgment roll of record against the petitioner." It
appears from the record that after the original petition was filed
in this court, the Attorney General and J. B. A. Robertson,
former county attorney of Lincoln county, filed with the district
court of Lincoln county a petition asking for an order *nunc pro
tunc,* correcting the record in the case of Territory of Oklahoma
v. Lyda Howland. That petition was heard on the 10th day of
August, 1909. The relator here, Lyda Howland, being present
in person and by counsel, the district court heard the testimony,
and found as a fact that the relator, Lyda Howland, was tried
and convicted in the district court of Lincoln county, territory
of Oklahoma, March term, 1902, and on the 11th day of April,
1902, was sentenced to imprisonment in the territorial prison at
hard labor for life, and that by inadvertence of the clerk of the
district court the judgment and sentence of the court was not
entered on the records in said court in the manner provided by
law; and, after hearing the testimony and finding as a fact that
said judgment was rendered and the defendant sentenced on the

11th day of April, 1902, the court did, on August 10, 1909, order that the judgment as pronounced in that court on the 11th day of April, 1902, be entered *nunc pro tunc*.

Counsel for relator, in the brief filed in this case and in the oral argument, insist that the court was without authority to enter the order *nunc pro tunc;* that such an order could not be entered, for the reason that it would be "an *ex post facto* judgment, and affect the right of this petitioner." The power of making an entry *nunc pro tunc* seems to have been possessed and exercised by courts of law and in equity from the earliest times. The period through which this right could be successfully invoked has never been limited. The power has been confined to those cases in which some hardship would be visited upon one of the parties without any fault of his, unless the judgment was entered. The power to enter judgments and orders *nunc pro tunc* is inherent in the courts, both at law and in equity, and is not dependent for its existence upon any statute. It is a power which courts have and liberally exercise to make their records speak the truth; and, if a clerk has omitted to make an entry, whether before or after final judgment, the court may require him to supply this omission *nunc pro tunc*. When the entry is amended, it is nothing more than perfected evidence of what, in contemplation of law, existed from the time the judgment was rendered, and this amended judgment should be given effect as if no error had occurred in the original entry. There might be conditions, of course, under which judgments *nunc pro tunc* should not be entered; for instance, if the rights of individuals would be prejudiced, or where the conditions of persons had been changed by reason of their relying on a judgment as originally entered. But no such condition arises here. In this instance it appears from the records, and from the findings of the district court of Lincoln county, that the relator was tried and convicted in the district court of Lincoln county, territory of Oklahoma, and was sentenced to serve the term of her natural life in the territorial penitentiary at hard labor. It cannot be said that she was de-

3 Cr.—10

prived of any right by the inadvertence of the clerk to record the judgment of the court. The state had a right to have the judgment of the court entered of record. The entering of the judgment *nunc pro tunc* could not possibly work a hardship on the relator. It in no way affects the term of her imprisonment, or changes her relation to society. The state had a perfect right to have the evidence of her conviction and sentence perpetuated, and the judgment *nunc pro tunc* does no more than this. Courts have a continuing power over their records not affected by the lapse of time. Should the record in any case be lost or destroyed, the court whose record it was possesses the undoubted power, at any time afterwards, to make a new record.

The amendment to the original petition also alleges that the "alleged judgment and sentence recorded by an order *nunc pro tunc,* and now made a part of the return, thus to change the issues as joined in this case, is false, untrue, and is set up in the return for fraudulent purposes." There is no contention made by counsel for relator that the findings of the court, on which the *nunc pro tunc* order is based, were made without legal evidence. There beng no contenton of that kind, the presumption prevails that the court acted on sufficient competent testimony. It is not for this court to question the evidence on which the district court of Lincoln county made this order *nunc pro tunc.* The court on the evidence there introduced found, as a fact that the judgment and sentence was entered on the 11th day of April, 1902, and that finding is conclusive on this court. The court having found that it was a mere error of the clerk, and it being clearly within the province of the court to correct such error, and the corection having been made, the order stands as originally made and intended, and must be given effect accordingly. 1 Freeman on Judgments, 71; *Bobo v. State,* 40 Ark. 224; *Ward v. Magness,* 75 Ark. 12, 86 S. W. 822; *Jones v. Lewis,* 30 N. C. 70, 47 Am. Dec. 338.

Counsel for petitioner insist that, even though the district court of Lincoln county, territory of Oklahoma, could have made the order *nunc pro tunc,* the district court of Lincoln county, state of Oklahoma, was not authorized to make the order, for the rea-

son, they alleged, that so far as this case is concerned, the state court is not the legal successor of the territorial court, and that the case against Lyda Howland was not a "pending" case in the sense in which that term is used in Act Cong. March 4, 1907; c. 2911, § 20, 34 Stat. 1286, being an amendment to the Enabling Act (Bunn's Const. p. 160). It is conceded that the Enabling Act and the acceptance of the provisions of the same in the Constitution of the state transfers to the state courts all causes, proceedings, and matters, civil or criminal, pending in the district courts of Oklahoma Territory. The question to be determined is, Is this case pending in the sense as used in the Enabling Act. An action is "pending" until a judgment is fully satisfied, according to Words and Phrases, vol. 6, p. 5277, citing the following cases: *State v. Tugwell,* 19 Wash. 238, 52 Pac. 1056, 43 L. R. A. 717; *Ulshafer v. Stewart,* 71 Pa. 170; *Holland v. Fox,* 3 El. & Bl. 37; *Wegman v. Childs,* 41 N. Y. 159; *Gates v. Newman* 18 Ind. App. 392, 46 N. E. 654.

In the case of *United States v. Taylor* (C. C.) 44 Fed. 2, the United States Circuit Court, defining the word "pending" under the Enabling Act of the territory of Washington, used the following language:

"It is contended that, because a final decree had been previously rendered, the case had terminated, and was not a pending case at the time the territorial court passed out of existence upon the admission of the state of Washington into the Union; and, therefore, in respect to this case, this court is not the successor of the territorial court. The decision upon this point involves simply a definition of the word 'pending' as used in the twenty-third section of what is commonly called the 'Enabling Act.' Act Feb. 22, 1889, c. 180, 25 Stat. 683.

"In my opinion this act, when all its provisions are considered, manifestly shows that Congress intended to fully protect and preserve, not merely the rights of parties in a few select and especially favored ones of the cases commenced in the territorial courts, but every right of every party in every case which at any time had been or should be commenced in those courts during their existence; and the words 'all cases, proceedings, and matters * * * pending,' used in the act, must be construed to embrace all cases,

proceedings, and matters initiated in the territorial courts, and in which, at the time of the actual transformation of the territorial judicial system into the state and national systems, there should be yet any vitality, force, or virtue. I have heretofore decided, in a case which had proceeded to judgment in a territorial court, that the court, which, as to that case, was successor to the territorial court, should proceed with it, from the precise point to which it had already progressed, exactly as if the case had been commenced and proceeded with to the same point in that court. This view is supported by the Court of Appeals of New York in the case of *Wegman v. Childs,* 41 N. Y. 159, and in that case other decisions are cited and followed. Certainly rights established by a final judgment ought not to be held to have been forfeited or sacrificed by this statute, if by any reasonable or fair construction of its terms a different conclusion can be arrived at. The construction I have given to the act does lead to a different and more satisfactory conclusion. The construction contended for by counsel for the respondent does not, for the word 'pending' is used in the clause descriptive of the class of cases and proceedings to be transferred to the state courts, and bears exactly the same relation to those cases that it does to the cases and proceedings which are transferable to the national courts, and it is not possible to exclude this court from taking jurisdiction of a case on the ground that, because it had proceeded to judgment in a territorial court, it then ceased to be a pending case, and yet hold that by virtue of this act of Congress the courts of this state could take cognizance of the same case. I hold, therefore, that the case has been lawfully transferred to this court, and also that, being so transferred, this court, of necessity, must adopt as its own all the proceedings and orders of its predecessor in the case. including the judgment, and must exercise the same powers which that court would now have if it had continued to be, including the power to punish a violation of the injunction. The motion to discharge the rule is therefore denied."

Even though it be said that the case against Lyda Howland would not be included in the restricted meaning of the term "pending," yet the district court of Lincoln county would have jurisdiction of the case under the rule of implied jurisdiction, as announced by the Supreme Court of this state in the case of *Ex parte Curlee,* 1 Okla. Cr. 145, 95 Pac. 414, Williams C. J., in rendering the opinion of the court, quotes with approval from the

*Merchants' Nat. Bank v. Braithwaite,* 7 N. D. 358, 75 N. W. 246, 66 Am. St. Rep. 653, as follows:

"Considering the provisions of the Enabling Act in connection with the failure of Congress to vest jurisdiction over territorial judgments in the federal courts, and the fact that Congress in passing the act must have contemplated that the state Constitution would create state courts having jurisdiction similar to that possessed by the territorial courts, and that these would be the better fitted to enforce judgments throughout the different counties in the state, we must infer an implied assent by Congress that jurisdiction over cases not pending should vest in state courts exclusively. Otherwise we must assume that those cases were to be left without any court possessing jurisdiction over them for any purpose whatever; for it is clear that no jurisdiction over them is vested by the Enabling Act in the federal courts."

Justice Williams, after quoting from the above case, says:

"In line with this decision, cases, not of a federal character, not pending, involving offenses committed prior to the admission of the state into the Union, should vest in the state courts. Of course nonpending actions of a federal character would necessarily vest in the United States Courts in the state erected out of said territories just as they do in the United States Courts in the other states. We had not found this case at the time the opinion was written in the case of *Ex parte Buchanen,* 20 Okla. 831, 94 Pac. 943, with which it is in harmony. The provisions of the Oklahoma Enabling Act being substantially those as contained in the Enabling Act for North and South Dakota, it is presumed that Congress in adopting the same for Oklahoma did it with a view of the construction that had been had thereon in North Dakota. Under the authority of the Buchanen Case, which is supported by the case just cited from North Dakota, the writ of *habeas corpus* is denied."

As to whether the criminal procedure act was adopted and was in force April 11, 1902, at the time the relator was tried in the district court of Lincoln county, territory of Oklahoma, we find, on investigation of the records of the clerk of this court, that question was raised on an application of Thomas P. Queenan, for writ of *habeas corpus,* filed in the Supreme Court, territory of Oklahoma, on September 10, 1901. The relator there alleged that his confinement was illegal for the reason that the criminal pro-

cedure act had never been adopted and was not in force. The Supreme Court heard the evidence as to whether the act had been properly adopted, and found that it had been, and denied the writ. For some reason it seems that this opinion of the Supreme Court was never published, although it is a matter of record in the office of the clerk. From the record in that case we are of the opinion that the criminal procedure act was in full force and effect on April 11, 1902, at the time the petitioner was tried in the district court of Lincoln county.

Counsel further insist that relator should be released for the reason that she was sentenced to the territorial penitentiary, but for a time was confined in the Kansas penitentiary at Lansing, Kan., under a contract purporting to have been made by representatives of the state of Kansas and the territory of Oklahoma, which contract, they allege, was void. Her detention in the Kansas penitentiary is not a matter before this court. The return in this case shows that she is now being retained in the state penitentiary of Oklahoma, under a judgment and sentence as above set forth.

The writ in this case will be denied, and the petitioner remanded to the custody of the warden of the state penitentiary at McAlester.

FURMAN, PRESIDING JUDGE, and DOYLE, JUDGE, concur.