. *Ex Parte* LARKIN.

[*Opinion Filed Feb. 7, 1891.*]

1.  TERRITORIAL LEGISLATURE—*Powers*—Under Organic Act Okla. T.
    § 6, providing that the legislative power of the Territory shall extend
    to all rightful subjects of legislation not inconsistent with the laws and
    constitution of the United States, it is competent for the legislature to
    continue in force, after the adjournment of the First legislature, the
    Criminal Code of Nebraska, extended to the Territory by the organic
    act, § 11, until the adjournment of the first session of the legislature.

2.  EX POST FACTO LAW—Act 1st. Assem. Okla. T., § 1, continuing in
    force the Criminal Code of Nebraska, which, by the organic act, was
    extended to that Territory till the adjournment of the first session of
    the legislature, is valid, and not *ex post facto*, as to offences already
    committed, but not prosecuted and punished.

*Habeas Corpus.*

*Thurston & Merrick*, for petitioner.

*Chas. Brown* and *C. B. Freeman*, for the Territory.

The opinion of the court was delivered by

GREEN, C. J.: This is a petition in this court for a
writ of *habeas corpus*. The writ was issued, directed
to the sheriff of Logan county, who brought the body
of the petitioner into court, together with the cause of
his caption and detention.

It appears from the petition and return, that the pe-
titioner was indicted by the grand jury of Logan county,
at the September term, 1890, of the district court, for
the crime of *incest* and *rape* upon the person of his
daughter, Della Larkin, and that he was taken upon a
*capias* issued on that indictment, and, in default of bail,
was committed to the common jail to await his trial.

The ground upon which his discharge from imprison-
ment is asked is, that the indictment is for an offense
against the criminal code of the state of Nebraska,
which was extended to and put in force in the Territory

of Oklahoma, by the organic act, until after the adjourn-
ment of the first session of the legislative assembly of
said Territory, which occurred at the close of the 24th
day of December, 1890; and, inasmuch as the law cre-
ating the offense has *expired*, there can be no trial, con-
viction and judgment upon the indictment; and that
the legislative assembly had no power to continue the
law in force as to crimes already committed against it
and prosecutions pending therefor.

Before the adjournment of the *first* session of the
legislative assembly, an act was passed and approved,
which provides, *inter alia*, as follows:

"SEC. 1. That as to all offenses committed in this
Territory against the laws of Nebraska, while in force
in this Territory, said laws so offended against shall
continue in force, until the apprehension and prosecu-
tion, and until the punishment and penelty is (are) im-
posed upon such offenders.

"SEC. 2. That as to all offenses mentioned in the pre-
ceding section, in which prosecutions are now pending,
the laws of criminal procedure of the state of Nebraska,
now and heretofore in force in this Territory, shall con-
tinue in force for the purpose of prosecuting such
offenses, but for no other purpose.

"SEC. 3. That as to all offenses mentioned in section
*one* of this act, where prosecutions have not yet been
commenced, such offenses shall be prosecuted under the
procedure in force in this Territory after the adjourn-
ment of the *first* session of the legislative assembly."

The last section of the act provides, that it shall take
effect, and be in force, from and after the adjournment
of the *first* session of the legislative assembly.

Section *eleven* of the organic act, which extends to
and puts in force, in the Territory of Oklahoma, the
criminal code of the state of Nebraska, so far as neces-
sary to be stated, has the following provisions:

"That the following chapters and provisions of the
compiled laws of the state of Nebraska, in force Novem-

ber first, eighteen hundred and eighty-nine, in so far as they are locally applicable, and not in conflict with the laws of the United States or with this act, are hereby extended to and put in force in the Territory of Oklahoma, until after the adjournment of the first session of the legislative assembly of said Territory."

But no saving clause, or provision, is made in the organic act, as to crimes committed and prosecutions pending, at and before the adjournment of the first session of the legislative assembly.

It is very clear, upon principle and authority, that if the act of the legislative assembly, continuing in force the criminal code of Nebraska, as to all crimes committed, and prosecutions pending under it, has no validity to accomplish what was proposed by it, the petitioner cannot be further prosecuted for the crime charged against him in the indictment, and should be discharged from his imprisonment.

Sir Mathew Hale, in his history of the Pleas of the Crown, states the rule of the common law, that when an offense is made treason or felony by an act of Parliament, and then the act is repealed, the offenses committed before such appeal, and the proceedings thereupon, are discharged by such repeal, and cannot be proceeded on after such repeal, unless a special clause in the act of repeal is made, enabling such proceedings, after the repeal, for offenses committed before the repeal. (Pleas of the Crown, vol. 1, p 291.)

The law, as stated by this learned author, has been steadily adhered to in England and in this country; and has been held and applied in innumerable cases, a few only of which it is necessary to cite.

In the cases of *Yeaton v. The United States*, 5 Cranch, 281, and *The Schooner Rachel v. The United States*, 6 id., 329, judgment of forfeiture upon proceedings in admiralty had been pronounced in the court of original jurisdiction, before the repeal of the statutes which

gave the forfeiture, and both judgments were reversed, on account of such repeal, by the supreme court. In the first case, Chief Justice Marshall said:

"After the expiration or repeal of a law, no penalty can be enforced, nor punishment inflicted, for violations of the law committed while it was in force, unless some special provision be made for that purpose by statute."

The result of all the authorities is briefly and clearly stated by Mr. Bishop:

"If the common or statutory law, which authorizes a prosecution and conviction for any offense, is repealed, or expired, before final judgment, the court can go no further with the case. Even after verdict is rendered against the prisoner, or after he has pleaded guilty, sentence cannot be pronounced, and he must be discharged. The same result follows, if there is a judgment which has been vacated by an appeal on a writ fo review. But after final judgment, a repeal of the law will not arrest the execution of the sentence." (Statutory Law, chap. 20, p 165.)

It is earnestly contended by counsel for the petitioner, that the legislative assembly had no power to continue in force the criminal code of Nebraska, and that the act by which it is attempted to be done is an *ex post facto* law and forbidden by the constitution of the United States.

By section 6 of the organic act it is provided,

"That the legislative power of the Territory shall extend to all rightful subjects of legislation not inconsistent with the constitution and laws of the United States."

This delegation of power is very ample, and there is no provision of the constitution and no law of the United States with which the act of the legislative assembly is not entirely consistent, unless it is obnoxious to the objection of being an *ex post facto* law. Surely the continuing in force of the criminal law offended against, until the offender is convicted and the penalty of the

law enforced, is a "rightful subject" of legislation within the meaning of the organic act.

It is urged, however, that inasmuch as the criminal code of Nebraska was extended and put in force in the Territory of Oklahoma, until after the adjournment of the first session of the legislative assembly, by act of congress, it cannot be continued in force by an act of the legislative assembly of the Territory; in other words, that only the power which created the laws could continue them in force.

It was intended by congress that the laws of Nebraska should constitute a *Territorial code*, as distinguished from the laws of the United States in force in the Territory of Oklahoma; and that they should sustain the same relation to the courts, and to the people of the Territory, and to the legislative assembly, as a code of laws enacted by the legislative assembly; and no reason is perceived why the legislative assembly might not have continued in force all the laws of Nebraska that were extended to and put in force in the Territory by the organic act; and if the legislative assembly had the power to continue these laws as a whole, it had the power to continue them in force as to all crimes committed and criminal prosecutions pending under them.

It is also objected to this act, that it is an independent act, and that a saving clause can only be made in the repealing statute itself. That the saving clause is usually found in the repealing act, may be admitted; but that it must be found there cannot be conceded. In most of the states of the Union, a saving of rights and prosecutions under a repealed statute is effected by a general law, and no provision is made in the repealing act at all; but the repealing act and the general law are construed together.

The case at bar does not, however, involve the question of a saving clause in repealing statute; it is the *ex-*

*piration* of a statute by its own limitation; and, if continued in force at all, as to crimes committed and prosecutions pending, it could only be done by an independent act.    And so we understand  the language of Chief Justice Marshall, quoted from *Yeaton v. U. S., riba supra.*

The act of the legislative assembly took effect *eo instanti* the criminal code of Nebraska would have expired, and continued it in force, as to all crimes committed and prosecutions pending, so that its continuity was not broken; and that there has been no moment of time, as to such crimes and prosecutions, when it can be said that it has not been in force.

The only remaining objection to the act of the legislative assembly is, that it is an *ex post facto* law within the meaning of the constitution of the United States. This objection to the act is wholly without force.    It in no manner changes the punishment to be inflicted upon the petitioner, in the event of his conviction, nor does it, in the least, change the mode of trial; but the proceedings are to be conducted to conviction and judgment under the provisions of the law against which the alleged crime was committed.

In *Fletcher v, Peck*, 6 Cranch, 87,–138, Chief Justice Marshall defined an *ex post facto* law to be, one which rendered an act punishable "in a manner in which it was not punishable when it was committed," and Chancellor Kent expressed his approval of this definition, which, he says, is distinguished for its comprehensive brevity and precision.    (Kent's Com, Vol. 4, p. 409.)

In *Calder v. Bell*, 3 Dallas,  386, Judge Chase stated his apprehension of what is meant by an *ex post facto* law.    He said such laws were,

"*First.*    Any law which makes  an  act done before the passing  of  the  law, and which was innocent when done, criminal.    *Second.*    Any law which aggra-

vates a crime, and makes it greater than it was at the time when it was committed. *Third.* Any law which changes the punisment and inflicts a greater punishment than the law annexed to the crime when committed. *Fourth.* Any law which alters the legal rules of evidence."

No valid objection is perceived to the act of the legislative assembly, continuing in force the criminal code of Nebraska, as to all crimes committed and prosecutions pending; and the discharge of the petitioner from his imprisonment is denied, and he will be committed to the common jail of the county to await his trial on the indictment.

Discharge denied.

All the justices concurring.