## In re W. B. SWAIM et al.

No. A-9559.   April 7, 1939.
(89 P. 2d 363.)

Everest, McKenzie & Gibbens, of Oklahoma City, for petitioners.

A. L. Jeffrey, Municipal Counselor, and J. L. Gowdy, Asst. Municipal Counselor, both of Oklahoma City, for respondent.

DAVENPORT, J.   This is an original petition in habeas corpus of W. B. Swaim and Fidelity Laboratories, Inc., a corporation, asking to be released from the custody of Granville Scanland, chief of police of the city of Oklahoma City, Okla.

The following facts are set forth in petitioners' petition:

Your petitioners, Fidelity Laboratories, Inc., and W. B. Swaim, represent and state to the court that they are restrained of their liberty and are unlawfully restrained in Oklahoma City, in the county of Oklahoma, state of Oklahoma, by the chief of police, Granville Scanland, of the city of Oklahoma City; that the cause of said restraint according to the best knowledge and belief of your petitioners, is:

That on the 31st day of August, 1938, a complaint was filed in the municipal court of the city of Oklahoma City charging that your petitioners herein are operating in violation of that certain ordinance of the city of Oklahoma City as follows, to wit:

"It shall be unlawful for any person to rear or keep any swine in the city at any place; provided however, that the provisions hereof shall not apply to any person or corporation engaged in the packing house business or in the selling or shipping of swine insofar as it may be necessary for said parties to bring swine and keep the same in said city in the legitimate transaction and carrying on of their business."

That by the judgment and order of the municipal court of the city of Oklahoma City your petitioners were fined by said court the sum of $19 and costs after having been adjudged guilty of the violation of said ordinance.

Your petitioners allege that said restraint is illegal, unlawful and unauthorized in that your petitioner W. B. Swaim is the manager of the business of the copetitioner, Fidelity Laboratories, Inc., and that the principal place of business is in Oklahoma City, Okla., and has been for a number of years. That Fidelity Laboratories, Inc., is a corporation organized and existing under the laws of the state of Illinois and was at the times hereinafter mentioned, and still is, authorized to transact business in the state of Oklahoma, and is the owner of the following described property situated in Oklahoma county, state of Oklahoma, to wit: Lots thirteen to twenty, inclusive, in block fifty-six in the Third Stockyards addition to Oklahoma City, according to the recorded plat.

That said corporation acquired lots 13 to 16, inclusive, in said block 56, on the 28th day of October, 1926, by warranty deed which is recorded in Book 316 of Deeds, page 336, in the office of the county clerk of Oklahoma county and then acquired title to lots 17 to 20, inclusive, in said block 56, on the 16th day of November, 1926, which is recorded in Book 316 of Deeds at page 339, in the office of the county clerk of Oklahoma county. That said corporation has been the owner of all of said property from and after the respective dates of purchase thereof and is now the owner thereof. That said corporation acquired lots 13 to 16, in said block

56, from Fidelity Supply Company, a corporation, and that Fidelity Supply Company, a corporation, acquired said lots 13 to 16, in block 56 aforesaid, from Eagle Biological & Supply Company on the 30th day of July, 1921, by warranty deed which is recorded in Book 267 of Deeds, at page 452, in the office of the county clerk of Oklahoma county. That Eagle Biological & Supply Company acquired title to said lots 13 to 16, inclusive, in block 56 aforesaid, by warranty deed from Eagle Serum Company on the 4th day of September, 1917, which is recorded in Book 196 of Deeds at page 105 in the office of the county clerk of Oklahoma county and that Eagle Serum Company acquired title to said lots 13 to 16, inclusive, in block 56 by warranty deed from Oklahoma Stockyards Serum Company on the 28th day of June, 1917, which is recorded in Book 180 of Deeds, page 45, in the office of the county clerk of Oklahoma county. That Oklahoma Stockyards Serum Company acquired title to lots 13 to 16, inclusive, in block 56 aforesaid on the 27th day of December, 1915, which is recorded in Book 178 of Deeds at page 570 in the office of the county clerk of Oklahoma county.

That shortly after the purchase of said property by the Oklahoma Stockyards Serum Company on the 27th of December, 1915, said company did build and construct upon said property a brick building and sheds with concrete floors for the express, sole and only purpose of manufacture of virus and serum for the prevention and spread of the disease of hog cholera. That all of said property was especially built and constructed for said purposes and is not fit, suitable or capable of being used, nor is it useful, for any other or different kind of business.

That at the time of the purchase of said property the Oklahoma Stockyards of said Company presented to the city of Oklahoma City, Okla., a petition and resolution relating to the application of the Oklahoma Stockyards Serum Company to erect and maintain a serum plant for the man-

ufacture and sale of hog cholera serum and virus on lots 14, 15 and 16, in block 56 in the Third Stockyards addition to Oklahoma City, and that the city of Oklahoma City did approve said petition and resolution and did authorize the mayor and city clerk to execute the same at a regular meeting of the board of commissioners of the city of Oklahoma City on the 28th day of December, 1915, and that approval thereof was by roll call vote and all of the commissioners did vote in favor of the adoption thereof. That thereafter and in reliance upon the acts of the city of Oklahoma City last above mentioned, Oklahoma Stockyards Serum Company did build said plant especially for the purposes of manufacturing serum and virus and for the sale of serum and virus, on said property. That Oklahoma Stockyards Serum Company did complete said building and commence to, and did, operate its business at said location on said property and did engage in the manufacture of serum and virus for the prevention of hog cholera pursuant to said resolution and further did submit to, and obtain the approval of, the Department of Agriculture of the United States for the construction of said building, and that the plant for the construction of said building as finally adopted and on which said building was actually constructed, did bear the approval of the Secretary of Agriculture as provided by the Acts of Congress. Said Oklahoma Stockyards Serum Company did operate said plant at said location and on said property for the manufacture of serum and virus as hereinafter more fully set out until the sale of said property to Eagle Serum Company on the 28th of June, 1917, and that Eagle Serum Company did manufacture serum and virus for the prevention of hog cholera from the time of purchase on the 28th of June, 1917, when it sold said property to Eagle Biological & Supply Company on the 4th of September, 1917. That Eagle Biological & Supply Company was granted License No. 2-A on December 10, 1917, by the Department of Agriculture of the United States for the manufacture of serum and virus for prevention of hog cholera and did

manufacture the same under said permit from the Department of Agriculture of the United States until sale thereof. That Eagle Biological & Supply Company did manufacture and sell virus and serum for the prevention of hog cholera from the 4th day of September, 1917, of the 30th day of July, 1921, when it sold said property to the Fidelity Supply Company and did operate under license from the Department of Agriculture of the United States under date of December 20, 1918, and did manufacture serum and virus on said property for the prevention of hog cholera under supervision of the Department of Agriculture of the United States; that the Fidelity Supply Company did manufacture serum and virus for the prevention of hog cholera from the 30th day of July, 1921, when it acquired said property, and did operate under a permit and license from the Department of Agriculture of the United States until it sold said property to Fidelity Laboratories, Inc., on the 28th of October, 1926; and that Fidelity Laboratories, Inc., did operate said property under license and permit of the Department of Agriculture, being No. 163 under date of March 2, 1926, to and including the present time, for the preparation and manufacture of serum and virus for the prevention of hog cholera including the further privilege and right of post mortem examinations of hyper immune hogs conducted in establishment 20-Q storage quarters located in building 2, establishment 20-Q as provided for in said license. That the meaning of "post mortem examinations of hyper immune hogs conducted in establishment 20-Q storage quarters located in building 2, establishment 20-Q" is that Fidelity Laboratories, Inc., was authorized by said license and permit to process pork and store bottled serum in establishment of Wilson & Co. at Oklahoma City, the words "Establishment 20-Q" being the license number and designation of Wilson & Co. and further designated storage quarters located in building No. 2 of Wilson & Co., which is establishment 20-Q.

That all of the business and the conduct of the business of Fidelity Laboratories, Inc., from the time that it acquired

the property and commenced the operations of its business, including the manufacture of serum and virus to the present time, have continuously been, and are now, under the direction, supervision and control of representative of the Department of Agriculture of the United States in the manufacture and development of its serum and virus. That the properties hereinabove described had been so constructed and especially built that they were used and useful only for the purpose of the manufacture of serum and virus for the prevention of hog cholera under the Acts of Congress and under the rules and regulations of the Secretary of Agriculture of the United States and have been under said Acts of Congress and rules and regulations aforesaid since said building was built in the early part of 1916.

That it is necessary, and has been ever since said plant has been in operation, that the operator of said serum plant go into the market and buy frequently and from time to time on an average of about three days each week, live, sound and healthy hogs which have to be approved by the Department of Agriculture for the purposes herein set out and that there is maintained at said plant competent, capable and experienced men representing the operator of said serum plant in the open market in the selection, acquiring and purchasing of hogs which meet the requirements, rules and regulations of the Secretary of Agriculture in order to manufacture and develop serum and virus for the prevention of hog cholera. That in addition thereto the operator of said plant is further required to maintain suitable and proper equipment, laboratories, pens and other machinery and appliances which are and have to be approved by the Department of Agriculture of the United States in the use in manufacture of serum and virus for the prevention of hog cholera. That no plant for the development of serum and virus aforesaid can operate without acquiring and purchasing in the open market from time to time live hogs for the express reason that the development of virus and the development of serum for the purpose of complet-

ing the manufacture thereof, require the use of the live hog in a healthy condition prior to inoculation in order to properly, fully and legally develop both virus and serum conformable to and in conjunction with the required rules, and regulations of the Department of Agriculture and the Acts of Congress. That the said Fidelity Laboratories, Inc., cannot maintain and operate its business on the properties hereinabove described unless and until it is allowed, permitted or granted the right to purchase, own, use and handle live, healthy hogs during the process of the manufacture of virus and serum. That without the use of said animals said factory and the manufacture of said product could not be had or done.

Petitioners further represent that not only are they engaged in the manufacture and development of virus and serum for the prevention of hog cholera but that they are also engaged in the packing house business from time to time in the handling of their business at their location and do actually kill and sell for consumption healthy and properly prepared hogs under supervision, control and regulation of the Department of Agriculture. That the Department of Agriculture of the United States maintains at the plant on said property hereinabove described one or more licensed representatives for the express purpose of inspecting of animals which come into and are used by Fidelity Laboratories, Inc., in all of its business and that each animal is necessarily and properly designated, marked and carded by the representative of the Department of Agriculture and that all of said animals and the entire plant are under the rules, regulations and supervision of the Department of Agriculture by and through their representative in respect of the condition of animals and the complete and highly sanitary condition of the properties and particularly of the pens in which all live animals are kept. That each of said pens when in use under directions of representative of the Department of Agriculture are thoroughly cleansed from two to four times each day. That

all animals are carefully inspected by the representative of the Department and are required to be kept in a clean, sound and healthy condition at all times.

That said Fidelity Laboratories, Inc., is expressly within the provisions and exception of said ordinance hereinabove described, for the reason that the provisions of said ordinance do not apply to any person or corporation engaged in the packing house business and that it is so engaged and that said properties have been used in the packing house business ever since the construction of the building and pens thereon.

Petitioners further charge that Fidelity Laboratories, Inc., is engaged in the acquiring of swine insofar as it is, or may be necessary, for it to bring swine and keep the same in the city of Oklahoma City in the legitimate transactions and carrying on of its business at the location and on the properties hereinabove described and that it thereafter does sell all of the healthy animals after inspection by representatives of the Department of Agriculture in commerce and that the same is a legitimate transaction and is necessary for the carrying on of its business.

Petitioners represent that the use of virus and serum is for the express purpose of saving from the most disastrous disease of hog cholera, swine and hogs within the United States and that its serum is used and shipped in Interstate Commerce and is sold under the regulations and by the directions of the Secretary of Agriculture for the purpose of preventing the spread and communication of the disease of hog cholera from one animal to another. That by regulation, rule and orders of the Secretary of Agriculture, Fidelity Laboratories, Inc., is required to, and does, keep on hand by the 1st of May of each year forty per cent of the total amount of virus and serum sold within the preceding year and that said regulation is for the purpose of always having available a sufficient amount of virus and serum for the prevention and spread of the disease of hog

cholera. That in the operation of its plant in the manufacture of virus and serum under supervision and control of the representative of the Department of Agriculture, it becomes necessary to, and it does, take the lives of animals from which the Fidelity Laboratories, Inc., does take the whole blood from all uninfected animals under the direct supervision of the representative of the Department of Agriculture and does use the same in the manufacture of serum and virus for prevention of the spread of the disease of hog cholera. That animals therefor are kept in its slaughterhouse and on its property under the supervision of the representatives of the Department of Agriculture and are either:

(a) Within 60 minutes after the death of said animal delivered to a licensed meat packer for the purpose of sale; or (b) by Fidelity Laboratories, Inc., duly prepared, delivered and sold in the local market of Oklahoma City;

That the Fidelity Laboratories, Inc., is required to, and does, wash and thoroughly cleanse all of its pens and all of the animals therein under directions of representative of the Department of Agriculture of the United States from two to four times every day for the purpose and prevention of spread of disease and to comply with the regulations in respect of sanitation. That it is absolutely necessary to cause live hogs to be acquired and used for the purpose of its business and without the use of live hogs in healthy condition that have been approved by the Department of Agriculture it cannot maintain and operate its business.

That the city of Oklahoma City, Okla., a municipal corporation, has undertaken to prosecute and has filed a complaint and charge against your petitioners charging them with a direct violation of said ordinance hereinabove set out and that your petitioners have been adjudged guilty thereof by the municipal court of said city, but in truth and in fact your petitioners are not in violation of and

have not offended any part of said ordinance for the reasons:

1. That at the time of the construction of said building the city of Oklahoma City did approve the location and erection of said plant and the maintenance thereof as a serum plant for the manufacture and sale of serum and virus for the prevention of hog cholera by virtue of action taken on December 28, 1915, before said building was constructed and said plant is still in operation.

2. That said corporation has always been engaged in the packing house business under the terms of said ordinance and is therefore not in violation, nor has it done anything to offend any of the provisions thereof.

3. That it has always been engaged in the buying, selling and disposing of swine insofar as it has been necessary for Fidelity Laboratories, Inc., to bring swine and keep the same in the corporate limits of the city of Oklahoma City in the legitimate, licensed and proper inspection and transaction of its business for the purpose of carrying on of the same.

4. Your petitioners further represent that prior to the filing of the charge against them aforesaid, other charges have been filed and that your petitioners have been threatened with the prosecution of such action each day for the keeping of swine or hogs within the corporate limits under said ordinance and will continue to prosecute unless this court determines the validity of said ordinance and its provisions thereof in respect to this corporation, its business and its operations, and whether in truth and in fact it has in any way violated any of the terms thereof.

5. Petitioners further charge that if said provisions of said ordinance in respect of exempting corporations engaged in the packing house business or in selling or shipping swine, insofar as it may be necessary to bring swine and keep the same in the city limits in the legitimate

transaction and carrying on of business do not apply to this corporation, then and in that event petitioners charge that said ordinance is invalid and unenforceable against them and violates the provisions of the Fourteenth Amendment to the Constitution of the United States, U.S.C.A., and the provisions of section 2, art. 2; section 7, art. 2; section 23, art. 2 and sec. 24, art. 2 of the Constitution of this state, Okla. St. Ann., in that said corporation will be deprived of its inherent right to liberty, pursuit of happiness and the enjoyment of the gains of its industry and that it will be deprived of its property without due process of law in that the city of Oklahoma City will endeavor to destroy the business, has threatened to and will carry out said threat by continually filing complaints from day to day in order to prevent said corporation from conducting its business on said properties now located within the limits of the city of Oklahoma City.

6. That it will take by a multiplicity of prosecutions the private property of said corporation without compensation and without the consent of the owner thereof and that it will damage said property for private use without compensation and without the consent of the owner thereof.

7. It will take the private property of said corporation or will damage the same for public use without just compensation and without any compensation whatsoever.

That the attempt of the city of Oklahoma City to prosecute your petitioners and the conviction thereof has been carried on and will be carried on for the expressed, avowed and open and announced purpose to prevent Fidelity Laboratories, Inc., from purchasing and bringing within the corporate limits to its place of business which are absolutely necessary in the operations of its business and thereby has determined to and will destroy the business of said corporation located on said properties aforesaid by preventing it from acquiring, taking, keeping, using, feeding and selling the live hogs necessary and abso-

lutely required in order to properly conduct its business in the manufacture of virus and serum for the prevention of hog cholera. That a petition was presented to the district court of Oklahoma county, Okla., and was refused September 1, 1938.

On the filing of the petition as hereinabove set forth, this court issued an alternative writ requiring the Honorable Granville Scanland, chief of police of the city of Oklahoma City, Okla., to show cause on the 15th day of September, 1938, at 1:30 p. m. in the courtroom of the Criminal Court of Appeals at the State Capitol Building in Oklahoma City, Okla., why the petitioners should not be released from his custody.

The petitioners by the rule were released on their own recognizance pending the hearing of the case in this court.

On September 6, 1938, Granville Scanland, chief of police of the city of Oklahoma City, Okla., filed his response to the rule to show cause, heretofore issued by this court and served upon him, and set forth the reasons for his detention of the petitioners as follows:

That the said W. B. Swaim and Fidelity Laboratories, Inc., a corporation, were placed in his custody on the 1st day of September, 1938, by the filing of a criminal complaint in the municipal court of the city of Oklahoma City, Okla., a copy of which is attached to petitioners' petition for a writ of habeas corpus and marked Exhibit "A," to which reference is hereby made, and the issuance thereunder by the municipal judge of the city of Oklahoma City of a warrant for the arrest of the said W. B. Swaim and Fidelity Laboratories, Inc., a copy of which is attached to petitioners' petition for writ of habeas corpus and marked Exhibit "B," to which reference is hereby specifically made; by the execution of said warrant and the arrest of the said W. B. Swaim and Fidelity Laboratories, Inc., by an officer of the city of Oklahoma City, Okla.

That thereafter, on the 1st day of September, 1938, the said W. B. Swaim and Fidelity Laboratories, Inc., by virtue of said complaint, said warrant and the execution thereof were brought before municipal court of the city of Oklahoma City, Okla., and after a plea of not guilty was taken, evidence was adduced and heard by the court, and the said W. B. Swaim and Fidelity Laboratories, Inc., were adjudged guilty of keeping swine in the city of Oklahoma City, Okla., at 1838 S. W. 13th street, in violation of the Oklahoma City Revised Ordinances of 1936, chapter 1, section 11, as charged in said complaint, said ordinance being in words and figures as follows, to wit: "1-11. Swine—Rearing—Keeping. It shall be unlawful for any person to rear or keep any swine in the city, at any place. Provided, however, that the provisions hereof shall not apply to any person or corporation engaged in the packing house business, or in the selling or shipping of swine, insofar as it may be necessary for said parties to bring swine, and keep the same, in said city in the legitimate transaction and carrying on of their business," and were assessed a fine of $19 and costs.

That upon failure of the said W. B. Swaim and Fidelity Laboratories, Inc., to pay said fine of $19 and $1 costs, they were by the judge of the municipal court of the city of Oklahoma City, Okla., committed into my custody as chief of police of the city of Oklahoma City, Okla., to be confined in the city jail in the city of Oklahoma City, Okla., until said fine and costs had been paid in full by cash or served out at a rate of $1 per day, all as provided by law. For further response respondent denies each and every material allegation contained in said petition for writ of habeas corpus except those which are specifically admitted.

The petition for habeas corpus and the response thereto are lengthy, but the greater part of them have been incorporated in this opinion for the reason that they substantially cover all questions involved in this case.

It is admitted by all the parties, by the petitioners and

the respondent, that the Fidelity Laboratories, Inc., has been an organized, existing and operating business where it is now located for many years and was so operating under the same laws and regulations it has been operating under at the time the petitioners in this case were arrested charged with violating the city ordinance hereinbefore set out.

It is further admitted that since the organization of this laboratory company a number of parties have purchased properties and built homes, including the Exchange Baptist Church, near where the laboratories have been operating.

In the presentation of this case by the respective parties the petitioners have argued at length the unconstitutionality of the ordinance and the respondents have argued at length the question that the laboratories as operated constituted a nuisance.

This court upon the hearing of a habeas corpus can not go into the equities and the respective legal rights of the parties, but can only pass on the question as to whether or not the petitioners in this case, the defendants in the municipal court, are shown to have violated a city ordinance of the city of Oklahoma City, Okla., and if they have not violated a city ordinance they are entitled to their discharge.

The ordinance, which the petitioners herein who were the defendants in the municipal court, is alleged to have violated, contains the following proviso, "Provided, however, that the provisions hereof shall not apply to any person or corporation engaged in the packing house business or in the selling or shipping of swine insofar as it may be necessary for said parties to bring swine and keep the same in said city in the legitimate transaction and carrying on of their business."

It is also admitted by all parties that the Fidelity Laboratories, Inc., was superintended and inspected by an agent

of the federal government and could only operate under its supervision and rules regulating the operation of the same.

The petitioners allege that they are restrained of their liberty and incarcerated in jail by the chief of police of the city of Oklahoma City without authority of law and seek to be released upon a writ of habeas corpus.

"The law denies to no one restrained of his liberty without a hearing the right to prove in some tribunal that the facts justifying his restraint do not exist. Ex parte Roman, 19 Okla. Cr. 235, 199 P. 580." 6 R.C.L. page 435.

In Ex parte Dunn, 33 Okla. Cr. 190, 242 P. 574, in the first paragraph of the syllabus this court said:

"The review of a judgment of conviction and imprisonment by writ of habeas corpus is limited to the questions: Had the court which rendered the judgment jurisdiction of the subject-matter and of the person convicted? And did the court have jurisdiction to render the particular judgment?" Ex parte Grant, 32 Okla. Cr. 217, 240 P. 759.

It is undisputed and the record clearly shows that all parties agree that in order for the Laboratories, Inc., to carry on its business of producing virus and hog serum that it was necessary for the laboratories to have and treat certain classes of hogs before slaughtering and securing the blood from the hogs for the purpose of producing the virus and serum.

It is further agreed that in the management and operation of the laboratories many of the hogs that were used at the laboratories were sold to the packing companies dressed and prepared for food consumption. All parties agree that the company could not operate and manufacture virus and serum for the treatment of hogs without having in its plant and keeping the hogs at the plant and treating different ages of hogs, and that it is absolutely necessary and essential that the laboratory company, incorporated, operating and manufacturing virus and serum must use hogs in the legitimate transaction and carrying on of its business.

Counsel for petitioners have prepared and argued at length in their brief the question of the constitutionality of the ordinance and many other questions which it is not deemed necessary to be considered by this court. The sole question being, Have petitioners violated an ordinance of the city? In the cases cited by petitioners we find they were direct proceedings in law or in equity filed by the public prosecutors on relation of the state or the county to restrain the operation of the plants complained of or to declare the plants a nuisance. The authorities cited by the petitioners beginning with Pennsylvania Coal Company v. Mahon, 260 U.S. 393, 43 S. Ct. 158, 67 L. Ed. 322, 28 A.L.R. 1321, and Burns Baking Company v. Charles W. Bryan, Governor, et al., 264 U. S. 504, 44 S. Ct. 412, 68 L. Ed. 813, 32 A.L.R. 661, on down through a long list of cases discussing the question of the constitutionality of municipal ordinances and what constitutes a nuisance all relate to civil procedure in the nature of an equitable proceeding where the questions can fully be tried on the issues involved and the law applicable to the questions involved correctly construed and interpreted according to the facts.

The authorities cited do not apply to the question involved in this case, and that is the question, Have the petitioners violated an ordinance of the city of Oklahoma City, Oklahoma, by keeping swine in the corporation?

If petitioners or the respondent desired to settle all legal and equitable questions involved in the operation of the Laboratories, Inc., they could have done so by the proper proceedings brought in a court of law or equity where all questions, including the constitutionality of the ordinance and the rights of individual citizens who own their property in the locality where the laboratories are located, could be settled. As shown by the testimony most of the property owners living in or near the Laboratories, Inc., purchased the same since the laboratories were located and began operation.

The authorities cited in the brief of the petitioners are not germane to and do not support the defense of petitioners that they have not violated an ordinance of the city of Oklahoma City, Okla., prohibiting the keeping of swine in the city limits.

Counsel for the respondent insists that the authorities cited by counsel for petitioners do not sustain the contention of petitioners. Respondent's counsel at length cite a number of authorities beginning with State of Missouri ex rel. Lamm v. Mid-State Serum Company et al., Mo. App., 272 S. W. 99, and citing many other cases which the respondent insists sustain the contention that the petitioners in this case have violated an ordinance of the city of Oklahoma City by keeping swine in the corporate limits at the laboratory's plant where the said laboratory for many years has been manufacturing virus and hog serum.

All of the authorities cited by the respondent relate to the right of a city under its police power to regulate what may be kept and what may not be kept within the corporate limits of the city. It would serve no useful purpose to set out each of the authorities set out by the respondent, suffice it to say that they are not germane to the question being considered by this court.

This court has mentioned the authorities cited by the petitioners and by the respondent in order that it may properly direct the attention of the able counsel for the petitioners and the respondent, that they have consumed many pages and hours of careful study of cases that have been passed upon by the respective courts declaring the law where the proper procedure had been brought in the courts and the facts when brought out justify the court's holdings, but as hereinbefore stated they are not germane to the question involved in this case as to whether or not under the agreed statement of facts in the record these petitioners have violated the ordinance of the city hereinbefore set out and referred to.

The ordinance, it is alleged the petitioners who were defendants in the city court violated, "makes it unlawful to rear or keep any swine in the city at any place," but the ordinance does not stop here, but goes further and uses the following language, "provided, however, that the provisions hereof shall not apply to any person or corporation engaged in the packing house business or in the selling or shipping of swine insofar as it may be necessary for said parties to bring the swine and keep the same in said city in the legitimate transaction and carrying on of their business."

It is agreed by the parties to this hearing that the Laboratories, Inc., could not operate and manufacture virus or hog serum in its plant without the keeping and handling of hogs and that the keeping of the hogs at the Laboratories, Inc., was in the legitimate transaction and the carrying on of the business of the Laboratories, Inc. Without hogs the virus and serum could not be manufactured.

It is also undisputed that many of the hogs used at the laboratory were slaughtered and turned over to the packing company where they were dressed and sold to the public trade. Evidently, at the time the ordinance, which the city alleges the petitioners violated, was passed by the board of aldermen and approved by the mayor, the city had in mind that there would be packing plants and businesses established within the corporate limits that would require the keeping, treating and slaughtering of hogs and for that reason the municipality adopted the ordinance carrying the proviso hereinbefore set out.

After carefully considering the question raised by the application of the petitioners for writ of habeas corpus, we hold that there is no testimony whatever to show that the petitioners have violated the city ordinance complained of and that by the undisputed facts in this case the police judge was without authority and jurisdiction to impose a fine upon the petitioners.

As heretofore stated in this opinion, we hold that the proper remedy has not been pursued to settle the question as to whether the laboratories may continue their business where located.

The conviction and sentence of the petitioners is without any evidence or authority of law to sustain it and the petitioners are entitled to the relief prayed for.

Writ granted and petitioners ordered discharged.

DOYLE, P.J., and BAREFOOT, J., concur.