### Ex parte JOHN CURTIS BARBER.

No. A-11064. July 21, 1948.

Writ of Certiorari Denied Oct. 18, 1948.

See 69 S. Ct. 59.

(196 P. 2d 695.)

John Curtis Barber, pro se.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for respondent.

BRETT, J. This is an original proceeding in habeas corpus by petitioner, John Curtis Barber, to secure his release from the penitentiary at McAlester, Okla. The petition alleges, in substance, as follows, to wit, that he was arrested on September 17, 1907, charged with the murder of Marion Farrell, that said offense was originally committed in what later became Pottawatomie county, but which at the time of the commission of said offense was Oklahoma Territory; that said Territory became merged with Indian Territory into what became the State of Oklahoma on November 16, 1907; that he was indicted by the district court of Pottawatomie coun-

ty, Okla., on December 23, 1907. Thereafter, on January 20, 1908, he was tried and convicted, and thereupon he was sentenced on January 30, 1908. At said time the State of Oklahoma not having a penitentiary, he complains he was committed to the Kansas State Penitentiary February 26, 1908, and thereafter transferred to McAlester, Okla., the site of the Oklahoma State Penitentiary.

It is well to note that this petition was filed by John Curtis Barber by himself. This court has repeatedly held that we "will view with liberality a petition for habeas corpus filed, without the aid of counsel, by an inmate in the penitentiary, and will give every reasonable inference that it can to such petition to see whether same is sufficent, upon its fact, to justify a hearing thereon". Ex parte Walker, 84 Okla. Cr. 190, 180 P. 2d 670, 671; Ex parte Tollison, 73 Okla. Cr. 38, 117 P. 2d 549. However, this court has further held that the writ of habeas corpus is limited to cases in which the judgment and sentence of the court attacked are clearly void. Ex parte Tollison, supra. Moreover, it has repeatedly been held that this court, on habeas corpus, "will not look beyond the judgment and sentence of any court of competent jurisdiction as to mere irregularities of procedure". Ex parte Tollison, supra; Ex parte Dunn, 33 Okla. Cr. 190, 242 P. 574; Ex parte Grant, 32 Okla. Cr. 217, 240 P. 759; Ex parte Hollingshead, 24 Okla. Cr. 131, 216 P. 486. Furthermore this court has repeatedly held "the remedy of habeas corpus is available wherever it is found that the court in which the petitioner was tried had no jurisdiction to try him, or that in its proceedings his constitutional rights were denied". Ex parte Barnett, 67 Okla. Cr. 300, 94 P. 2d 18, 19; Ex parte Massengale, 67 Okla. Cr. 181, 93 P. 2d 41. We

have also held that "in habeas corpus proceeding to obtain release of prisoner who is in custody under sentence, inquiry of Criminal Court of Appeals is limited to determination of whether court had jurisdiction of prisoner's person and of crime charged, and if such court had jurisdiction to convict and sentence, the writ cannot issue to correct irregularities in the proceeding". Ex parte Cannes, 77 Okla. Cr. 71, 138 P. 2d 561, certiorari denied, Cannes v. State, of Oklahoma, 320 U. S. 764, 64 S. Ct. 44, 88 L. Ed. 456; Ex parte Linam, 71 Okla. Cr. 155, 109 P. 2d 838; Ex parte Newman, 67 Okla. Cr. 401, 94 P. 2d 556; In re Swaim, 66 Okla. Cr. 30, 89 P. 2d 363.

The petitioner advances four contentions based upon the facts hereinbefore set forth. Petitioner contends that the state was without jurisdiction to try him for said offense, and without authority of law to cause him to be confined in the State Penitentiary of Kansas and to later return him to the State Penitentiary at McAlester. The first contention is based upon the proposition that under the foregoing facts, the indictment not having been returned before Oklahoma became a state, the federal court had jurisdiction to try the petitioner, and that should the writ of habeas corpus be granted he should be returned to the federal authorities for trial or be granted his outright release. This contention is wholly without merit as revealed by the cases of Ex parte Bailey, 1 Okla. Cr. 115, 94 P. 553, and Ex parte Buchanen, 1 Okla. Cr. 135, 94 P. 943, which involve precisely the identical question here presented, and wherein indictments for crimes were returned covering offenses under the laws then in force in both the Oklahoma and Indian Territory, respectively, after the admission of the state into the union, and no prosecution whatever had been

begun prior to such date. In both of these cases the Supreme Court of the state then having jurisdiction of criminal as well as civil matters held that such crimes were cognizable in the district court of the state in the county in which the offense was committed. In the later case of Ex parte Buchanen, supra, Judge Williams, then Chief Justice, said:

"The question is now presented whether or not a prosecution for the offense of manslaughter committed in that part of the state formerly known as the Indian Territory, where no prosecution whatever had been begun—not even a complaint or information having been filed against the accused—prior to the admission of the state into the Union, can be instituted in the state courts and prosecuted to final judgment thereafter. Section 20 of the enabling act (Act June 16, 1906, c. 3335, 34 Stat. 277) as amended March 4, 1907 (34 Stat. 1287, c. 2911) provides as follows:

"That all causes, proceedings, and matters, civil or criminal, pending in the district courts of Oklahoma Territory, or in the United States Courts in the Indian Territory, at the time said territories became a state, not transferred to the United States Circuit or District Courts in the state of Oklahoma, shall be proceeded with, held, and determined by the courts of said state, the successors of said district courts of the territory of Oklahoma, and the United States Courts in the Indian Territory; with the right to prosecute appeals or writs of error to the Supreme or appellate court of said state, and also with the same right to prosecute appeals or writs of error from the final determination in such cases made by the Supreme or appellate court of such state to the Supreme Court of the United States, as is provided by law for appeals and writs of error from the Supreme or final appellate court of a state to the Supreme Court of the United States. All criminal cases pending in the United States Courts in the Indian Territory, not transferred to the United States Circuit or District Courts in the

state of Oklahoma, shall be prosecuted to a final determination in the state courts of Oklahoma under the laws now in force in that territory.'

"In the decision of this court in the cases of Higgins v. Brown (decided at this term of court) [1 Okla. Cr. 33], 94 P. 703, wherein it was held said section, having been concurred in on the part of the state by virtue of provisions contained in sections 27 and 28 of the Schedule to the Constitution, vested jurisdiction in the proper state courts of all criminal cases, not of a federal character, pending at the time of the admission of the state into the union in the territorial courts of Oklahoma and in the United States Courts in the Indian Territory, and in that same case it was held that if the crime of murder was committed in what was formerly the Indian Territory, not within a fort or arsenal or in such place in said territory over which jurisdiction would have been solely and exclusively within the jurisdiction of the United States, had it at that time been a state, such offense was cognizable in the state courts. To make such a construction as to necessitate the conclusion that the state courts would not have jurisdiction of such character of crimes, not of a federal nature or character, as might have been committed prior to statehood on the Indian Territory side, where no prosecution had been begun, would be tantamount to holding that it was the intention of Congress and of the constitutional convention that such crimes, not of a federal character, should not be prosecuted to final judgment; for, although they had been defined as offenses by the laws in force in the Indian Territory, they would not be cognizable within the federal courts after the admission of the state into the Union. Moore v. United States, 8 Cir., 85 F. 465, 29 C. C. A. 269.

"Section 1 of the Schedule to the Constitution provides:

" 'No existing rights, actions, suits, proceedings, contracts, or claims shall be affected by the change in the forms of the government, but all shall continue as if

no change in the form of government had taken place. And all process which may have been issued previous to the admission of the state into the union, under the authority of the territory of Oklahoma, or under authority of the laws in force in the Indian Territory, shall be as valid as if issued in the name of the state.'

"When this provision is construed in the light of the provisions of section 20 of the enabling act, as amended by the act of March 4, 1907, we are aided in reaching an interpretation as to what was intended by said section 1, supra; and we conclude that said provision has the same effect as that contained in said section 20, supra, where it is stipulated that certain cases 'shall be prosecuted to final determination in the state district courts of Oklahoma under the laws now in force in that territory.' In the case of Moore v. United States, 8 Cir., 85 F. 468, 29 C. C. A. 272, supra, the court says:

" 'Its civil and political powers were transferred to other officers; those of peculiarly internal character to officers of the new state; those which bore any relation of the national system of government, of which the state formed a part, to officers holding commissions under that system, and possessing only the powers derived from their commission. As one of the states of the Union, and in virtue of that character forming one of the districts of the United States, the district of Utah, and the Circuit Courts sitting in that district, would possess no peculiar jurisdiction or authority; none which did not appertain to other districts and the Circuit Courts having cognizance of matters within those districts.'

"In the case of Shively v. Bowlby, 152 U. S. 1, 48, 14 S. Ct. 548, 566, 38 L. Ed. 331, the court says:

" 'By the Constitution, as is now well settled, the United States having rightfully acquired the territories, and being the only government which can impose laws on them, having the entire dominion and sovereignty, national and municipal, federal and state, over all the territories so long as they remain in the territorial condi-

tion,' etc. See, also, Higgins v. Brown [1 Okla. Cr. 33, 94 P. 703], and authorities therein cited.

"It may be contended, however, that the people of the state, through their constitutional convention, could not provide for the continuance of laws enacted by Congress for the government of the Indian Territory for the purpose of prosecuting to final judgment existing rights and actions, etc., having arisen thereunder prior to the admission into the Union. In the Bailey case, supra [Ex parte Bailey, 1 Okla. Cr. 115, 94 P. 553], it was held that the only limitation upon the action of the convention was that the state government should be republican in form and the provisions of the enabling act complied with; everything else, which the convention had the power and the right to insert by reasonable implication, being permitted, and afterwards concurred in through the action of the President in issuing the proclamation admitting the state into the Union. In the case of Ex parte Larkin, 1 Okla. 53, 25 P. 745, 11 L. R. A. 418, it was held that it was within the power of the Legislature of the territorry of Oklahoma to continue in force after the adjournment of the Legislature certain laws of Nebraska extended to said territory by act of Congress known as the 'Organic Act' for said territory (Act May 2, 1890, c. 182, § 11, 26 Stat. 81), until the adjournment of the first Legislature thereof. Afterwards, in the case of United States v. Pridgeon, 153 U. S. [48], 54, 14 S. Ct. 746, 38 L. Ed. 631, the Larkin case is cited with approval. In the Pridgeon case the offense was committed prior to the adjournment of the first Legislature of said territory, and he was tried and convicted in the proper court of said territory after the adjournment of said Legislature. If the Legislature at its first session could by enactment provide for the continuing in force of said laws, why could not the constitutional convention in like manner continue in force laws that had been in almost practically the same manner extended in force in the Indian Territory by Congress, for the purpose of continuing prosecutions for the violation of said laws prior to the admission of the state into the Union?

Benner v. Porter, 9 How. 235, 13 L. Ed. [119], 120; United States v. Pridgeon, 153 U. S. 53, 54, 14 S. Ct. 746, 38 L. Ed. 633; Ex parte Larkin, 1 Okla. 53, 25 P. 745 [11 L. R. A. 418]; Moore v. United States, 85 F. 465, 29 C. C. A. 269.

"Whilst we do not readily reach these conclusions, yet we are clear that it was the intention of Congress, as well as the constitutional convention, that malefactors, who had committed serious and grave offenses against society prior to the admission of the state into the Union, when there had been no opportunity to lodge indictments against them ought not to go unwhipped of justice, and thereby the law could not be vindicated after such infractions."

In this case the court announced the rule to be:

"Where an indictment for the crime of manslaughter, an offense committed under the laws in force in the Indian Territory, is returned after the admission of the state into the Union, no prosecution whatever having been begun prior to such date it is cognizable in the district court of the state in the county in which the offense was committed."

It therefore appears that based upon this reasoning, the identical contention made by the petitioner in the case at bar was rejected and the writ denied. See to the same effect, Higgins v. Brown, 1 Okla. Cr. 33, 94 P. 703, 717, wherein the Supreme Court said:

"It is obvious that it has been the universal practice in this republic to prosecute pending criminal cases, not of a federal nature, in the state courts, as the successors of the territorial courts when new states were admitted into the Union where it was so provided in their respective Constitutions. * * *"

Therein the court held:

"Sections 16 and 20, inclusive, of the enabling act for Oklahoma, Act June 16, 1906, c. 3335, 34 Stat. 276,

277, as amended March 4, 1907, c. 2911, 34 Stat. 1286, 1287, when concurred in by the state of Oklahoma by the adoption of sections 27 and 28 of the Schedule to the Constitution, being a proper exercise of power by the Congress under article 4, § 3, of the Constitution of the United States, are valid.

"An indictment for the crime of murder, alleged to have been committed within the jurisdiction of the United States court for the Northern District of the Indian Territory, and pending in said court on the admission of the state into the Union, is cognizable in the district court of the state, as its successor, in the county in which the offense was committed."

To the same effect see Ex parte Ellis, 1 Okla. Cr. 125, 94 P. 556.

Next he contends that his confinement in the penitentiary in Kansas is without authority of law since he was convicted by a state court. This contention is without merit. The Act of Congress of June 16, 1880, 21 Stat. at Large 259, 277, provides:

"That the legislative assemblies of the several Territories of the United States may make such provision for the care and custody of such persons as may be convicted of crime under the laws of such Territory as they shall deem proper, and for that purpose may authorize and contract for the care and custody of such convicts in any other Territory or State, and provide that such person or persons may be sentenced to confinement accordingly in such other Territory or State, and all existing legislative enactments of any of the Territories for that purpose are hereby legalized."

Pursuant to the authority conferred by this statute, the Legislative Assembly of the Territory of Oklahoma in 1890, Stats. 1893, p. 739, 741, passed an act empowering the Governor of the Territory of Oklahoma to contract with some other state or territory for the care and

custody of such persons as may be convicted of crimes punishable in the penitentiary, by the courts of the Territory. This act provides also that after entering into such contract, persons convicted of crimes punishable by imprisonment in the penitentiary shall be sentenced by the district courts to the penitentiary named in the contract, with like force and effect as though such penitentiary were located in the territory. Provision was also made that officers having such prisoners in charge are authorized to convey them from the territory to any other state or territory where provisions have been made for their incarceration. Under the provisions of this statute in 1890 the territorial legislative assembly (c. 64, §§ 1, 2, 3, 4, 5, 6) gave the Governor of the Territory of Oklahoma authority and power to contract in the name of said territory with the proper authorities of some other state or territory for the care and custody of persons convicted of crimes punishable in the penitentiary. It also conferred upon him authority to bind the territory for the faithful performance of such contract or contracts. Under the authority of the foregoing congressional act and the statute just quoted from, the Governor of the Territory of Oklahoma made a contract with the State of Kansas for the custody and incarceration of persons convicted of crimes where a penitentiary sentence was involved. Thereafter succeeding territorial Legislatures empowered succeeding territorial governors to so contract. The petitioner's contention in this regard is based upon the proposition that he was tried and convicted and sentenced to the penitentiary at Lansing, Kan., after the Territory of Oklahoma became a state, and that the court was without authority so to do. With this we cannot agree. Since the state Legislature had not yet enacted legislation providing for establishment of a penitentiary, the court was clearly

within its power to sentence the petitioner to the Kansas Penitentiary at Lansing. This must necessarily follow under the provisions of the Enabling Act, § 13, 34 Stat. 275, providing in part as follows:

"* * * and that the laws in force in the Territory of Oklahoma, as far as applicable, shall extend over and apply to said State until changed by the legislature thereof."

In Grayson v. Perryman, 25 Okla. 339, 106 P. 954, 955, Judge Williams, speaking for the Supreme Court then having jurisdiction of both criminal and civil matters (prior to the creation of the Criminal Court of Appeals) said:

"The Legislature of the State of Oklahoma not having passed any act thereon, the laws brought over from the territory of Oklahoma by virtue of the terms of the enabling act (Act June 16, 1906, c. 3335, 34 Stat. 267 (U. S. Comp. St. Supp. 1909, p. 154) and section 2 of the Schedule of the Constitution, control."

It is, therefore, apparent under the authority of the statutes of the United States, the Enabling Act, and the decisions of the Supreme Court, that the petitioner's confinement in the penitentiary at Lansing, Kansas, until other provision had been made by the State Legislature, was valid. Thus the contract made by the last territorial governor with the State of Kansas for the keeping of persons convicted of crimes for which they were sentenced to the penitentiary was in force and effect at the time the sentence herein complained of was imposed upon the petitioner.

The petitioner next contends that his removal back to the penitentiary at McAlester, Oklahoma, was without authority of law.

It appears that the first State Legislature (S. L. 1907, c. 22, art. 1) created a Prison Board of Control. General Statutes of Oklahoma 1908, § 5300, p. 1106, provides as follows:

"For the purpose of removing and transferring to the State of Oklahoma any person or persons who have been convicted of any crime in the Territory of Oklahoma or the State of Oklahoma by any court and sentenced by said court to the Territorial prison or the Kansas State penitentiary, located at Lansing, Kansas, and now confined therein, there is hereby created a Board of Control to be composed of the Governor, the Attorney-General and president of the Board of Agriculture, who shall have full power and authority to order on the proper authorities of the State of Kansas, to direct, remove and transfer any person heretofore or hereafter convicted of any crime, by any court in the Territory of Oklahoma, or the State of Oklahoma and sentenced by said court to imprisonment in the Territorial prison or the Kansas State penitentiary located at Lansing, Kansas. Provided, said Board shall not order, direct, remove or transfer any person from said Kansas penitentiary located at Lansing, Kansas, until it shall make arrangements with the authorities of the State of Kansas, that said convicts may be removed from the prison in the State of Kansas as aforesaid to the State of Oklahoma, and to be confined in prison in the State of Oklahoma at such place or places as said Board of Control may deem to the best interest of the State. (L. 1907, ch. 22, art. 1. Took effect May 26, 1908.)"

Under the authority of the foregoing section, the removal of the petitioner from the penitentiary of Kansas located at Lansing was within the authority of the Board of Control. Said Board of Control has since been abolished and the State Board of Public Affairs created in its stead for the control of penitentiaries, etc. (Title 57, O. S. A. § 132). Under the provisions of § 5300, Gen.

Stat. 1908, upon effecting the removal and transfer of the petitioner from Kansas to Oklahoma, the place of confinement was vested in the Board of Control as it may deem to the best interest of the state.

Finally, the petitioner contends that when the court sentenced him to the penitentiary at Lansing, Kansas, subject to his being received by the warden thereof and that if he was not received directing that he be returned to the Pottawatomie county jail, he was thus being subjected to a double sentence. This contention is likewise without merit. The court will take judicial notice of the fact that at the time the judgment and sentence was pronounced herein, the state of the law was in doubt. Oklahoma having become a new state the court apparently was not aware of the fact that the territorial laws carried over until the Legislature made other provisions. Thus the court sentenced the defendant to the penitentiary at Lansing with the provision that if not received he be returned to the county jail in Pottawatomie county, Oklahoma. This was done in order that the petitioner might not escape what the trial court regarded as a just punishment. Under the conditions herein involved and the court being in doubt he could make no other provision with regard to the public security in keeping with the ends of justice. Furthermore, since no attempt was made to execute the provision of the judgment and sentence returning him to the Pottawatomie county jail, that part of the order stands as an absolute nullity. Moreover, the Board of Control was vested under the foregoing statute with the authority upon the petitioner's removal from the State of Kansas to designate his place of confinement or places of confinement as said Board of Control deemed to be to the best interest of the state. Thus his confinement within the State of Oklahoma af-

ter his removal was an administrative and not a judicial act under the authority of the Board of Control. See, in this connection, Ex parte Neighbors, 85 Okla. Cr. 183, 187 P. 2d 276. Thereafter, the penitentiary having been erected and control thereof being vested in the State Board of Public Affairs, and the petitioner now being confined therein under a life term, Title 57 O. S. A. § 105, his present proper place of confinement is in the penitentiary at McAlester. It therefore follows, as was said in the recent case of Ex parte Combs, 87 Okla. Cr. 164, 195 P. 2d 772:

"* * * Where in a habeas corpus proceeding it appears from the petition and the facts involved that the present custody and place of confinement of a person convicted of crime is according to law the writ will be denied."

The court therefore being of the opinion the court had jurisdiction of the person, jurisdiction of the subject matter and authority under the law to pronounce the judgment and sentence rendered, and that the custody and confinement of the petitioner both past and present having been in all things according to law, this court is without jurisdiction to consider the petition, and the writ is accordingly denied.

BAREFOOT, P. J., and JONES, J., concur.